Aaron HENRY et al.,
Plaintiffs-Appellees,

v.

FIRST NATIONAL BANK OF CLARKS-
DALE et al., Defendants-Appellants,

v.

MISSISSIPPI ACTION FOR PROGRESS,
INC., Defendant-Appellee.

No. 76–4200.

United States Court of Appeals,
Fifth Circuit.

May 21, 1979.

Dixon L. Pyles, W. E. Gore, Jr., Crane D. Kipp, Jackson, Miss., for Claiborne Hardware, et al.

Frank Parker, Alix Sanders, Lawyer's Comm. for Civ. Rights Under Law, Jackson Miss., Robert E. Kopp, Neil H. Koslowe, Attys., Dept. of Justice, Washington, D. C., Nathaniel R. Jones, Charles E. Carter, New York City, Robert A. Murphy, William Caldwell, Lawyer's Comm. for Civ. Rights Under the Law, Washington, D. C., Dennis J. Dimsey, App. Section, Civ. Rights Div., Dept. of Justice, Washington, D. C., Allen R. Snyder, Benton R. Hammond, Vincent H. Cohen, Washington, D. C., for Aaron Henry and N.A.A.C.P.

Thomas E. Royals, Robert H. Taylor, Jr., Jackson, Miss., for Mississippi Action for Progress, Inc.

Before THORNBERRY, AINSWORTH and MORGAN, Circuit Judges.

AINSWORTH, Circuit Judge:

Serious questions of federalism are raised in this strongly contested Mississippi civil rights case, especially as concerns the right of a federal court, on constitutional grounds, to enjoin the execution of a judgment of a Mississippi state court. In this appeal we review the action of the federal district court in issuing three preliminary injunctive orders prohibiting the enforcement by state court plaintiffs of an injunction and damages award entered in a judgment of the Chancery Court of Hinds County, Mississippi pending review of the state court judgment by the Mississippi Supreme Court and, if necessary, by the United States Supreme Court. This dispute has been before the federal courts and the state courts of Mississippi intermittently for almost a decade. It is before us now for the second time.

The factual background to this extended litigation has been summarized in earlier reported decisions of this court and the

district court. *See Henry v. First National Bank of Clarksdale,* N.D.Miss., 1970, 50 F.R.D. 251, *rev'd,* 5 Cir., 1971, 444 F.2d 1300, *cert. denied,* 405 U.S. 1019, 92 S.Ct. 1284, 31 L.Ed.2d 483 *reh. denied,* 406 U.S. 963, 92 S.Ct. 2057, 32 L.Ed.2d 351; *Henry v. First National Bank of Clarksdale,* N.D.Miss., 1976, 424 F.Supp. 633. The latter cited decision is the subject of the instant appeal.

The pertinent facts begin in 1966 when civil rights organizations and several black citizens in Claiborne County and Port Gibson, Mississippi organized a boycott of white businesses in Claiborne County and Port Gibson to protest racial discrimination by the merchants and local public officials and to seek certain concessions concerning racial matters. The leaders of the boycott held public meetings and organized picketing, leafletting and solicitations to encourage black citizens to support the boycott. At times violence or threats of violence were employed to enforce the boycott and discourage black patronage of white merchants.

*Procedural History*

On or about October 31, 1969, after the boycott had been in effect several years, 23 white merchants in Port Gibson and Claiborne County filed suit in the Chancery Court of Hinds County against the National Association for the Advancement of Colored People (NAACP), a New York corporation, Mississippi Action for Progress (MAP), a federally-funded, nonprofit Mississippi corporation, and 146 individual defendants, seeking injunctive relief and $3.5 million in damages. Plaintiffs sought to enjoin the defendants from picketing or guarding white businesses, conducting a secondary boycott by applying economic pressure on businesses to seek concessions from public officials, asking, soliciting, threatening or coercing others to cease trading with white businesses, and otherwise restraining trade in violation of the laws of Mississippi. The state plaintiffs alleged that the boycott and the various activities undertaken in support thereof violated Mississippi's antitrust laws. The complaint also named as parties de-fendant the First National Bank of Clarksdale and 55 other banks alleged to have in their possession funds of the national NAACP or of its branches and auxiliary offices in Mississippi. Plaintiffs sought to attach these funds pursuant to Mississippi statutes authorizing the attachment in chancery of the assets of a nonresident debtor. Miss.Code Ann. §§ 11–31–1 et seq. (1972). Soon after the filing of the complaint the clerk of Chancery Court issued writs of attachment to the defendant banks.

On November 7, 1969 the Mississippi State Conference of the NAACP (State Conference) and the Coahama Branch of the State Conference (Local Branch), on behalf of itself and all other local branches, brought suit in federal district court against the Bank of Clarksdale, the Coahama National Bank and the First National Bank of Clarksdale as representatives of all the defendant banks in the state action, seeking the release of funds sequestered pursuant to the state writs of attachment. The State Conference and the Local Branch alleged that, although they used the name NAACP, they were independent and autonomous organizations, residents of Mississippi, and that they were suffering irreparable harm from the attachment of their assets without notice or an opportunity to be heard in a state suit to which they were not parties. On motion by the First National Bank of Clarksdale, the district court ordered the state court plaintiffs joined as parties defendant in the federal suit as necessary and proper parties, and on December 15, 1969 the district court entered a preliminary injunction which *inter alia* enjoined the state court plaintiffs "subject to final action of this court, from subjecting or causing to be subjected in any way funds of plaintiffs deposited in the defendant banks to attachment or other process causing plaintiffs to be deprived of the use of their funds." The state court plaintiffs, joined as defendants in this federal action, failed to appeal or otherwise challenge the injunction. *See Henry v. First National Bank of Clarksdale,* 5 Cir., 1971, 444 F.2d 1300, 1305–06 & nn. 4, 5, 6, 7, 8 & 9 *(Henry I ).*

Also on December 15, 1969 the national NAACP moved to intervene as a party plaintiff in the federal court suit and the original federal plaintiffs moved to join MAP as a party defendant. In addition, the federal plaintiffs amended their complaint to expand significantly the issues in the case and the relief sought. Aaron Henry who originally appeared in his official capacity as president of the State Conference and the Local Branch now appeared individually and as the representative of the class of all individual defendants in the state court suit. The amended complaint sought generally to enjoin the state court plaintiffs from further prosecuting the state suit. The district court granted the NAACP's motion to intervene and the motion to join MAP and on June 9, 1970 the district court entered a preliminary injunction barring prosecution of the state suit by the state court plaintiffs "until the rights of the parties can be ascertained." 50 F.R.D. 251, 268.

On appeal this court reversed the district court's grant of the preliminary injunction because of lack of subject matter jurisdiction, holding that there is no state action for purposes of 42 U.S.C. § 1983 or the Fourteenth Amendment where the state has simply held open its tribunals to litigation by private parties. The mere availability of a forum for the resolution of private conflicts does not clothe private litigants with the authority of the state. *Henry I, supra* at 1309. For purposes of finding the requisite state action, we distinguished the situation where private parties have merely brought an action in state court from the situation where a private party has procured a judgment and is able to enlist the power of the state on his behalf in enforcing the judgment. *See, e. g., New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); *Stevens v. Frick,* 2 Cir., 372 F.2d 378, *cert. denied,* 387 U.S. 920, 87 S.Ct. 2034, 18 L.Ed.2d 973 (1967). While reversing the district court's injunction of June 9 against further prosecution of the state suit, we made clear that the preliminary injunction

entered December 15, 1969 barring interference with funds in the defendant banks was not under consideration in the appeal and that it remained in force pending further action by the district court. *Henry I, supra* at 1306.

■ Pursuant to this court's mandate the district court dissolved its injunction against prosecution of the state court suit and dismissed the amended complaint. The state court suit proceeded to trial in the Hinds County Chancery Court on June 11, 1973; the trial took approximately eight months with the appearance of about 144 witnesses. On August 9, 1976 the Hinds County Chancellor rendered a lengthy opinion pursuant to which he entered on August 19 a decree and order granting injunctive relief against the continuation or enforcement of the boycott by the state court defendants, holding the defendants, NAACP, MAP, and various individuals, jointly and severally liable for damages and attorneys' fees in the amount of $1.25 million, finding that the funds in the Mississippi banks subject to writs of attachment in chancery were the property of the nonresident NAACP and directing the banks to pay the funds to the state court plaintiffs. *Claiborne Hardware, Inc. v. NAACP,* No. 78,353 (Miss.Ch.Ct. Aug. 9, 1976). In Mississippi, trial court judgments become executory immediately upon their entry, although execution of a judgment for damages may be stayed pending appeal to the appellate courts by the posting of a supersedeas bond in the amount of 125% of the judgment. *See* Miss.Code Ann. § 11–51–31 (1972). The NAACP, MAP and the individual defendants moved the Chancery Court for a stay of execution or for a stay and supersedeas without bond or with reduced bond on September 24, 1976. The Chancellor denied the motion on September 30 and the Mississippi Supreme Court denied a similar motion for a stay on October 1.

On the same day that the Mississippi Supreme Court denied the motion for a stay, the NAACP, the State Conference, the Local Branch, and later the United States as intervenor applied to the federal district

court for a temporary restraining order and for a preliminary injunction, prohibiting the state court plaintiffs from enforcing or executing the Chancery Court's judgment pending review of that judgment by the Mississippi Supreme Court and, if necessary, the United States Supreme Court. *See Henry v. First National Bank of Clarksdale*, N.D.Miss., 1976, 424 F.Supp. 633. The federal plaintiffs filed a supplemental and amended complaint that raised essentially three kinds of allegations. First, the complaint alleged that the preliminary injunction entered December 15, 1969 against seizing the disputed funds in the various state banks was still in effect and that, notwithstanding the state court judgment, any attempt to seize those funds would directly contravene that injunction. Second, the United States claimed a full and complete equitable lien interest in all of MAP's funds and property derived from federal grants made exclusively to it for the purpose of operating the Headstart Program in Mississippi. The United States argued that no property interest of the United States can be subjected to judicial process without its consent and that injunctive relief was necessary to prevent the impending loss of United States property in MAP's hands to the state court plaintiffs.

Finally, the federal plaintiffs alleged that the Chancery Court's injunction and damages award prohibited and penalized constitutionally protected activities and that they would suffer irreparable harm from execution of the Chancery Court's judgment during the pendency of the appeal to the Mississippi Supreme Court. Specifically, the plaintiffs argued that the Chancery Court could not properly enjoin the organization of a boycott to protest racial discrimination or the use of nonviolent and noncoercive picketing or solicitation in support thereof since rights of free speech and association are guaranteed by the First and Fourteenth Amendments; nor could the state court assess damages for the exercise of protected rights. The federal plaintiffs claimed that without equitable relief they would suffer immediate and irreparable harm: first, through the serious impairment of the free exercise of protected rights by the state injunction and second, in the serious financial difficulties attendant on satisfying the judgment or posting a supersedeas bond. The NAACP filed supporting affidavits asserting that the national organization was essentially bankrupt and that posting the bond, while possible, would entail the cessation of virtually all the NAACP's national activities.

In three orders dated October 20, 1976, the district court preliminarily enjoined the state court plaintiffs from taking any action to enforce the final decree of the Chancery Court against the NAACP or the other state defendants, from interfering in any way with the operation of the federally assisted program administered by MAP, and from seizing or interfering with the funds attached in the various state banks, pending the appeal of the state court judgment to the Mississippi Supreme Court. The district court required the federal plaintiffs to post bonds totaling $110,000 for the protection of any parties later found to have been wrongfully enjoined. On appeal, the successful state court plaintiffs who have been enjoined from enforcing or executing the state court judgment challenge the entry of each of the district court's orders. We affirm as to each of the orders.

*The Issues*

 Appellants' numerous contentions on appeal, when viewed in the most favorable light, raise essentially four major issues with respect to each of the district court's orders. First, appellants challenge the district court's jurisdiction over the federal claims underlying each of the three orders. Second, they argue that the Anti-Injunction Act, 28 U.S.C. § 2283 (1976), prohibits the orders enjoining the state plaintiffs' execution of the state court judgment. Third, they contend that principles of equity, comity and federalism require that the federal court abstain from exercising its jurisdiction in this case under the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Finally, appellants argue that the district court

erred in concluding that the four requirements for entry of a preliminary injunction had been met for each of the orders. The requirements include the probability that the plaintiff will succeed on the merits of his claim, the necessity of an injunction to prevent irreparable harm to the plaintiff, the absence of serious harm to the party enjoined, and the finding that the issuance of an injunction is in the public interest.[1]

Although there is substantial overlap in the relief afforded by the district court's three orders, the legal theories underlying each of the orders vary considerably. We,

1. For the first time on appeal, appellants contend that principles of *res judicata* and collateral estoppel preclude consideration of certain aspects of the federal action by the district court. These matters are affirmative defenses which are considered waived if not pleaded in the trial court. *See* Rule 8(c), Fed.R.Civ.P., 28 U.S.C.; Wright, Miller & Cooper, Federal Practice and Procedure: Civil §§ 1270 & 1278 (1978). They will not be considered for the first time on appeal. *Guerra v. Manchester Terminal Corp.*, 5 Cir., 1974, 498 F.2d 641, 657 n.44, 658 n.47; *Dellums v. Powell*, 184 U.S. App.D.C. 275, 285 n.13, 1977, 566 F.2d 167, 177 n.13, *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146–47, 57 L.Ed.2d 1161 (1978); *Sartin v. Commissioner of Public Safety*, 8 Cir., 1976, 535 F.2d 430, 433; *Schramm v. Oakes*, 10 Cir., 1965, 352 F.2d 143. As appellants failed to present these issues in any fashion to the court below, we do not consider them here.

Even if appellants had raised these issues below, however, we have serious doubt that, in an action brought under section 1983, a party who has been involuntarily forced to litigate his federal constitutional issues in a state court would be precluded from raising those issues in a federal court. The Supreme Court has indicated that the preclusive effect of a state court decision on a subsequent suit under section 1983 remains an open question. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 606 n.18, 95 S.Ct. 1200, 1209, 43 L.Ed.2d 482 (1975); *Ellis v. Dyson*, 421 U.S. 426, 440, 95 S.Ct. 1691, 1699, 44 L.Ed.2d 274 (1975) (Powell, J., dissenting); *Preiser v. Rodriguez*, 411 U.S. 475, 509 n.14, 93 S.Ct. 1827, 1847, 36 L.Ed.2d 439 (1973) (Brennan, J., dissenting); *Florida State Board of Dentistry v. Mack*, 401 U.S. 960, 91 S.Ct. 971, 28 L.Ed.2d 245 (1971) (Burger, Ch. J., & White, J., dissenting from a denial of certiorari). *Compare Montana v. United States*, —— U.S. ——, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). The Supreme Court has, in several recent cases, declined to reach this question where the parties failed to raise it properly below. *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 629 n.4, 97 S.Ct. 2881, 2886, 53 L.Ed.2d 1009 (1977); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 607–08 n.19, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482 (1975); *Sosna v. Iowa*, 419 U.S. 393, 397 n.3, 95 S.Ct. 553, 556, 42 L.Ed.2d 532 (1975); *cf. Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977).

The rigid application of principles of *res judicata* and collateral estoppel to section 1983 actions like this case would be particularly troublesome in that parties like the federal plaintiffs herein could never obtain a hearing on their federal constitutional claims in a federal court. In a purely private action there is generally no state action for purposes of section 1983 prior to the entry of a judgment in a state court. *Henry I*, 444 F.2d at 1300. Where the only federal question in the litigation is the defendant's federal constitutional defense, unrelated to laws protecting racial equality, the defendant cannot remove the action to federal court either under the civil rights removal statute, 28 U.S.C. § 1443, or under the general removal statute, 28 U.S.C. § 1441. *City of Greenwood v. Peacock*, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966); *Georgia v. Rachel*, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966); *Johnson v. Mississippi*, 5 Cir., 1974, 488 F.2d 284, *aff'd*, 421 U.S. 213, 95 S.Ct. 1591, 44 L.Ed.2d 121 (1975); *Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936).

If the defendant is thereafter bound by the state court's decision regarding his federal claim, his only opportunity to obtain access to a federal forum would lie in the slim possibility of direct review to the United States Supreme Court under 28 U.S.C. § 1257. Precluding an action under section 1983 in these narrow circumstances would effectively frustrate the congressional intent that section 1983 serve as a safeguard against the infringement of federally protected rights by a state's judiciary as well as by other branches of state government. *See Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).

These concerns distinguish this case from decisions in this and other circuits holding that a party that voluntarily submits a federal claim to a state court is thereafter bound by the decision of the state court. *See, e. g., Cornwell v. Ferguson*, 5 Cir., 1977, 545 F.2d 1022; *Jennings v. Caddo Parish School Board*, 5 Cir., 1976, 531 F.2d 1331, *cert. denied*, 429 U.S. 897, 97 S.Ct. 260, 50 L.Ed.2d 180 (1976); *Brown v. Chastain*, 5 Cir., 1969, 416 F.2d 1012, *cert. denied*, 397 U.S. 951, 90 S.Ct. 976, 25 L.Ed.2d 134. *But see Brown v. Georgia Power Co.*, S.D.Ga., 1973, 371 F.Supp. 543, *aff'd*, 5 Cir., 1974, 491 F.2d 117, *cert. denied*, 419 U.S. 838, 95 S.Ct. 66, 42 L.Ed.2d 65 (1974).

therefore, discuss each of the orders separately with respect to the above issues.

*Discussion*

## I.

First, we consider the order generally enjoining the state court plaintiffs from enforcing the state Chancery Court's injunction and damage award pending review of the state court judgment by the Mississippi Supreme Court and, if necessary, by the United States Supreme Court. This is the broadest of the three orders and largely encompasses the relief embodied in the other two. It is the only order preventing enforcement of the state court's injunction against all picketing, persuading, soliciting or advising in support of the boycott and the only order generally delaying execution of the damages award against the NAACP and the individual defendants.

Appellants contend that the district court lacked subject matter jurisdiction over the constitutional claims underlying this order. This contention is without merit. The supplemental and amended complaint filed October 1, 1976 alleged that enforcement of the state court's judgment would infringe rights secured to the federal plaintiffs by the First and Fourteenth Amendments of the Constitution and by 42 U.S.C. § 1983;[2] as such it plainly stated a federal cause of action over which the district court had jurisdiction under 28 U.S.C. §§ 1331(a)[3] and 1343(3).[4] The requisite state action which we found absent in *Henry I* has since been supplied by entry of the state Chancery Court judgment which is immediately enforceable. The crucial difference between a private party who has merely filed a civil suit in a state forum and the successful litigant who possesses an immediately enforceable state judgment is that in the latter case the full power and authority of the state can be invoked on behalf of the litigant. It is this exercise of state power that provides state action for purposes of the Fourteenth Amendment and section 1983. *Henry I, supra.* In the ordinary case a state court judgment must have been approved by the highest court of the state before it becomes immediately enforceable. *See New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). The present case is unique, however, for several reasons.

The injunction issued by the state Chancery Court is presently enforceable, and there can be no doubt that the state court plaintiffs can invoke the full power and authority of the state to enforce the injunction pending appeal. The damage award is a closer question, but we are convinced that the unique facts of this case justify our conclusion that the damage award is also immediately enforceable, even assuming the possibility of state appellate review. First, the damage award is essentially based on the underlying injunction. As we will demonstrate, *infra*, significant parts of the injunction are at odds with the First Amendment. Second, appellate review of the damage award may only be had by the posting of a supersedeas bond which would

---

2. 42 U.S.C. § 1983 provides:

> **§ 1983. Civil action for deprivation of rights**
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. 28 U.S.C. § 1331(a) provides:

> **§ 1331. Federal question; amount in controversy; costs**

> (a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

4. 28 U.S.C. § 1343(3) provides:

> (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

**300**

effectively bankrupt the NAACP. Under the circumstances, we conclude that under applicable state law appellate review of this case is made so difficult as to justify our conclusion that the state Chancery Court judgment is immediately enforceable.

■■■ Appellants next argue that the Anti-Injunction Act, 28 U.S.C. § 2283 (1976), prohibited issuance of the district court's injunction delaying enforcement of the state court judgment by the state plaintiffs. Section 2283 provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Section 2283 applies to restraints on private parties as well as to those imposed directly on a state court. *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 286, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970); *Oklahoma Packing Co. v. Oklahoma Gas & Electric Co.*, 309 U.S. 4, 60 S.Ct. 215, 84 L.Ed. 537 (1940).

This section, however, poses no bar to the order under consideration, for the order plainly falls within one of the statutory exceptions to section 2283. After carefully reviewing the history and policies underlying section 2283 the Supreme Court held in *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), that section 1983 satisfies the requirements of the first exception to section 2283 as an express congressional authorization to intervene in state court proceedings in order to protect federal rights. *See also Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977); *Trainor v. Hernandez*, 431 U.S. 434, 444–45 n.8, 97 S.Ct. 1911, 1918–19, 52 L.Ed.2d 486 (1977); *Joiner v. City of Dallas, Texas*, 5 Cir., 1974, 488 F.2d 519, 520; *American Radio Assoc. v. Mobile Steamship Assoc., Inc.*, 5 Cir., 1973, 483 F.2d 1, 6; *Palaio v. McAuliffe*, 5 Cir., 1972, 466 F.2d 1230, 1232 n.7. As the district court's first order was entered pursuant to a claim under section 1983 involving the deprivation of constitutional rights, section 2283 did not prohibit the issuance of this injunction.

■■ Appellants argue that, even if section 2283 creates no absolute bar to entry of an injunction in this case, the district court should have abstained from exercising its jurisdiction under the doctrine articulated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. The applicability of the *Younger* abstention doctrine requires consideration entirely apart from the determination that section 2283 does not prohibit issuance of an injunction. *See Mitchum v. Foster*, 407 U.S. 225, 243, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972); *Trainor v. Hernandez*, 431 U.S. 434, 444–45 n.8, 97 S.Ct. 1911, 1918–19, 52 L.Ed.2d 486 (1977). Neither the Supreme Court nor this court has made the *Younger* doctrine generally applicable to all civil litigation and we decline the invitation to do so in this case.

In *Younger*, the Supreme Court held that a federal district court ought not enjoin a pending state criminal prosecution absent exceptional circumstances such as a prosecution brought in bad faith or for harassment, a prosecution under a statute flagrantly unconstitutional in all respects or other possibly extraordinary circumstances. *Younger v. Harris, supra*, 401 U.S. at 53–54, 91 S.Ct. at 755. This doctrine rests on the traditional reluctance of federal courts of equity to intervene in state criminal prosecutions and on the considerations of comity and federalism that must guide relations between state and federal courts. The Court explained the principle of comity as "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* at 44, 91 S.Ct. at 750.

While certain considerations of comity and federalism pertain to civil proceedings as well as to criminal prosecutions the Supreme Court thus far has declined to extend the *Younger* doctrine to all civil litigation.

*See Huffman v. Pursue, Ltd.,* 420 U.S. 592, 607, 95 S.Ct. 1200, 1209, 43 L.Ed.2d 482 (1975); *Juidice v. Vail,* 430 U.S. 327, 336 n.13, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (1977); *Trainor v. Hernandez,* 431 U.S. 434, 44–45 n.8, 97 S.Ct. 1911, 1919, 52 L.Ed.2d 486 (1977). In each instance where the Court has applied *Younger* principles to civil litigation, a state or a state official was engaged in advancing important state interests in the state courts, and intervention by the federal courts would have seriously impaired the pursuit of those interests.

In *Huffman,* the state brought a civil nuisance action against the owners of a movie theater that showed obscene films. The state could have chosen instead to bring a criminal proceeding against the owners. The Court concluded that paramount state interests akin to those implicated in a criminal prosecution were involved in this civil action "in aid of and closely related to criminal statutes which prohibit the dissemination of obscene materials," 420 U.S. at 604, 95 S.Ct. at 1208, and, accordingly, held that federal abstention was appropriate.

Similarly, in *Juidice,* the state enforced a contempt citation for failure to observe a court order to appear in court. In holding *Younger* principles applicable, the Court emphasized the state's strong interest in enforcing rules for the orderly administration of its judicial system. "A State's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest. . . . The contempt power lies at the core of the administration of a State's judicial system . . . .. [F]ederal court interference with the State's contempt process is 'an offense to the State's interest . . . likely to be every bit as great as it would be were this a criminal proceeding.'" (citations omitted) 430 U.S. at 335–36, 97 S.Ct. at 1217.

Finally, in *Trainor* the Court found abstention indicated where the state initiated a civil proceeding for the recovery of monies fraudulently obtained from the state by a welfare recipient. The Court discussed the importance that the state as sovereign attached to the prosecution of the suit, stressing that the state could have initiated criminal proceedings to vindicate its interests and concluding that "the principles of *Younger* and *Huffman* are broad enough to apply to interference by a federal court with an ongoing civil enforcement action such as this, brought by the State in its sovereign capacity." 431 U.S. at 444, 97 S.Ct. at 1918. Mr. Justice Blackmun's concurrence particularly emphasized the significance to be accorded the state sovereign's presence in the litigation. *Id.* at 448–49, 97 S.Ct. at 1920–21.

The instant case plainly differs from *Huffman, Juidice,* and *Trainor.* First, this case involves an exclusively private dispute to which the state has never been a party either in the state or the federal proceedings. This does not represent a case where the state has undertaken the vindication of important state interests in a civil proceeding. To the extent that Mississippi has any interest in the instant litigation, it is the interest in providing and supervising state forums for the orderly resolution of private conflicts. The district court's order does not interfere with this state function.

This brings us to the second important distinction between the case under review and the *Younger* line of decisions: the narrow scope of the relief afforded the federal plaintiffs. The district court's order herein does not prohibit further proceedings in the state courts, but merely delays enforcement of the state Chancery Court's judgment until the Mississippi Supreme Court and, if necessary, the United States Supreme Court have had an opportunity to review the important constitutional issues presented in this case. The district court carefully limited its relief to preserving the federal plaintiffs (defendants in the state court suit) from certain irreparable injury during the pendency of the appeal, while not interfering with the normal progress of the state court case through the Mississippi appellate courts. Thus, the district court's order was

considerably less intrusive and disruptive of state functions than the broader injunctions under consideration in *Younger* and its progeny.

■ As the federal plaintiffs had exhausted all avenues of emergency state relief available to them, we conclude that the *Younger* doctrine did not require the federal district court to abstain from entertaining this suit and granting appropriate relief. Appellants have cited no decision of the Fifth Circuit indicating a contrary result. Indeed, those cases which have applied *Younger* principles in the civil context have involved instances where the state as sovereign employed proceedings akin to criminal actions to advance important state interests and are, thus, entirely consistent with the analysis we adopt today. *See Duke v. Texas,* 5 Cir., 1973, 477 F.2d 244, *cert. denied,* 415 U.S. 978, 94 S.Ct. 1565, 39 L.Ed.2d 874 (1974); *Palaio v. McAuliffe,* 5 Cir., 1972, 466 F.2d 1230.

■ Having concluded that the action of the district court was not barred either by the Anti-Injunction Act or by the *Younger* abstention doctrine, we now consider whether the requirements for entry of a preliminary injunction were satisfied. The standard for appellate review of a preliminary injunction is simply whether the district court abused its discretion in issuing the injunction; the reviewing court does not engage in the same plenary review that would be indicated on appeal of permanent relief. *Brown v. Chote,* 411 U.S. 452, 456–57, 93 S.Ct. 1732, 1735, 36 L.Ed.2d 420 (1973); *Morgan v. Fletcher,* 5 Cir., 1975, 518 F.2d 236, 239; *DiGiorgio v. Causey,* 5 Cir., 1973, 488 F.2d 527, 528; *Johnson v. Radford,* 5 Cir., 1971, 449 F.2d 115, 116.

■ There are four requirements for the issuance of a preliminary injunction: first, there must be a substantial likelihood that the plaintiff will ultimately prevail on the merits of his claim; second, the injunction must be necessary to prevent irreparable injury; third, the threatened injury to the plaintiffs must outweigh the harm the injunction might do the defendants, and,

fourth, entry of an injunction must be consistent with the public interest. *Morgan, supra* at 239; *Canal Authority v. Callaway,* 5 Cir., 1974, 489 F.2d 567, 572; *DiGiorgio, supra* at 529. We consider these requirements in order.

■ The federal plaintiffs have argued that the injunction and damages award entered by the state Chancery Court are unconstitutional in that they prohibit and penalize activity protected by the First Amendment. Before addressing the merits of plaintiffs' constitutional claim, we emphasize that appellate review by us in the circumstances of this case is limited to an inquiry into whether the district court could, without abusing its discretion, have found that the federal plaintiffs were likely to succeed on the merits of their claim. Beyond this determination we intimate no opinion regarding the ultimate merit of their contentions.

■ It is a cardinal principle of First Amendment law that restrictions on speech must be narrowly drawn so as not to restrain or cramp the exercise of protected rights. *Police Department of Chicago v. Mosley,* 408 U.S. 92, 101, 92 S.Ct. 2286, 2293, 33 L.Ed.2d 212; *Carroll v. President and Commissioners of Princess Anne,* 393 U.S. 175, 183–84, 89 S.Ct. 347, 353, 21 L.Ed.2d 325 (1968); *Coates v. City of Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1972); *Broadrick v. Oklahoma,* 413 U.S. 601, 611, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973); *Shelton v. Tucker,* 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231. Restraints on speech must be carefully tailored so as not to exceed the ambit of permissible regulation.

■ The boycott in this case was organized to protest racial discrimination by the merchants and city government of Port Gibson. The organizers of the boycott undertook a variety of activities including public speeches, private solicitations and picketing to encourage other members of the black community to support the boycott. There were several instances of violence or threats of violence by supporters of

the boycott against black individuals who continued to patronize white businesses. Violence, threats, and other coercive activity, of course, enjoy no protection under the First Amendment, and the district court properly left undisturbed those aspects of the state Chancery Court's injunction prohibiting "physical violence, damage to any real or personal property, or obstructing the entrance to the place of business of any complainant."

The state court's injunction, however, was not limited to prohibiting acts or threats of violence but extended to every form of speech or activity designed to discourage for whatever reason anyone from trading with the businesses of the state plaintiffs.[5] This sort of sweeping prohibition on speech and communication raises serious constitutional problems. Consistent with the views underlying its injunction, the state court assessed the state defendants for all damages suffered by the state plaintiffs during the period of the boycott which the court found attributable to the failure or refusal of black citizens to trade with the white businesses in anticipated numbers.

■ At the heart of the Chancery Court's opinion lies the belief that the mere organization of the boycott and every activity undertaken in support thereof could be

subject to judicial prohibition under state law.[6] This view accords insufficient weight to the First Amendment's protection of political speech and association. There is no suggestion that the NAACP, MAP or the individual defendants were in competition with the white businesses or that the boycott arose from parochial economic interests. On the contrary, the boycott grew out of a racial dispute with the white merchants and city government of Port Gibson and all of the picketing, speeches, and other communication associated with the boycott were directed to the elimination of racial discrimination in the town. This differentiates this case from a boycott organized for economic ends, for speech to protest racial discrimination is essential political speech lying at the core of the First Amendment.

In a closely analogous case, *Machesky v. Bizzell*, 5 Cir., 1969, 414 F.2d 283, which also involved a state injunction against picketing and other speech in support of a political boycott, we said:

"We start from the premise that peaceful picketing carried on in a location open generally to the public is, absent other factors involving the purpose or manner of the picketing, protected by the First Amendment." . . .

The right to picket is not absolute. It must be "asserted within the limits of not

---

**5.** The state Chancery Court's decree reads in pertinent part:

E. The defendants, and each of them, and all persons confederating and cooperating with them be and they are hereby permanently enjoined from:

1. Stationing guards, store watchers, enforcers, deacons, or black hats, or by whatever name such persons are called, at or near the business premises of the above named complainants.

2. Persuading, soliciting, advising, threatening, coercing, intimidating and restraining any person to withdraw and withhold his or her patronage or to cease trading with the above named complainants.

3. Blocking the streets and sidewalks near the business establishment of any complainant or obstructing the entrance to the place of business of any of the above named complainants.

4. Using physical violence against any person; inflicting damage to any real or personal property of any person; or using demeaning

and obscene language to or about any person; by reason of such person continuing to patronize or trade with any of the above named complainants or other persons.

5. Combining or colluding to interfere with the business of another person or for the purpose of restraining or monopolizing trade and commerce.

6. Picketing or patroling the premises of any of the above named complainants for the reason that the Court finds that the picketing is to attain an object which is in violation of the laws and public policy of Mississippi, and has been conducted against and enmeshed in a background of violence.

**6.** The Chancery Court found that the organization of the boycott and the activities undertaken in support thereof violated Mississippi common law and statutes prohibiting illegal secondary boycotts, Miss.Code Ann. § 97–23–85 (1972), restraints of trade, Miss.Code Ann. § 75–21–1, et seq. (1972), and unlawful conspiracies, Miss.Code Ann. § 97–1–1 (1972).

unreasonably interfering with the rights of others to use the sidewalks and streets, to have access to store entrances, and where conducted in such manner as not to deprive the public of police and fire protection." . . . These interests can, of course, be protected by state injunctions narrowly drawn. The injunction here, however, has not struck such a balance. It prohibits all picketing in the designated business areas of Greenwood, for whatever purpose and in whatever manner carried out. This overshoots the mark and the situation cannot be saved by *Milk Wagon Drivers Union v. Meadowmoor Dairies*, 1941, 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836, a case premised on violence of an intensity and duration in no way present here, or at least on the record before the district court.

The injunction here in question goes even further than prohibiting protected picketing. It enjoins "loitering or congregating . . . to induce, persuade, or coerce any person or persons not to trade or to do other business with . . Complainants. . . ." This, for aught else appearing, prohibits the distribution of leaflets or even speech directed toward the boycott effort.

We hold that the state court injunction here is unconstitutionally overbroad in that it lumps the protected with the unprotected in such a way as to abridge important public interests in the full dissemination of public expression on public issues. We hold also that where important public rights to full dissemination of expression on public issues are abridged by state court proceedings, . . . the district court is empowered to enjoin the state court proceedings to the extent that they violate these First Amendment rights.

*Id.* at 290–91 (citations omitted).

*Machesky* is fully consistent with other cases in which this court has demonstrated its sensitivity to the heightened First Amendment concerns implicated in picketing or boycotts in furtherance of important public issues as opposed to narrow economic interests. *See Kirkland v. Wallace*, 5 Cir.,

1968, 403 F.2d 413; *Davis v. Francois*, 5 Cir., 1965, 395 F.2d 730; *Kelly v. Page*, 5 Cir., 1964, 335 F.2d 114; *see also Smith v. Grady*, 5 Cir., 1969, 411 F.2d 181; *Medrano v. Allee*, S.D.Tex., 1972, 347 F.Supp. 605, *aff'd in part and vacated in part on other grounds*, 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974); *Cottonreader v. Johnson*, M.D.Ala., 1966, 252 F.Supp. 492.

This distinction has recently formed the basis for holding that the Sherman Act's prohibition against concerted refusals to deal does not reach boycotts that are intimately bound up with political speech and unrelated to any economic interests. *Missouri v. National Organization for Women*, W.D.Mo., 1979, 467 F.Supp. 289; *cf. Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

Given the procedural posture of this case, we have no need and, hence, make no attempt to articulate a comprehensive scheme for reconciling a state's interest in regulating economic activity with the First Amendment's protection of political speech. On review of a preliminary injunction, we need only decide whether the district court could, without abusing its discretion, have concluded that the federal plaintiffs were likely to prevail ultimately on the merits of their First Amendment claims. The district court did not abuse its discretion on this issue.

The second requirement for a preliminary injunction is that the plaintiff will suffer irreparable injury without the injunction. The district court found that the sweeping restrictions on speech and association embodied in the state Chancery Court's injunction would seriously impair the federal plaintiff's rights under the First Amendment, and that such restrictions in themselves constitute an irreparable injury. *See, e. g., Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *Machesky v. Bizzell*, 5 Cir., 1969, 414 F.2d

283. In the circumstances of this case, the enforcement of this injunction could effectively paralyze all efforts by the NAACP and the individual federal plaintiffs to protest racial discrimination in Port Gibson and in Claiborne County.

With regard to the damages award, the district court found, on the basis of extensive affidavits and financial statements submitted by various national officials of the NAACP, that either the execution of the $1.25 million damage award or the posting of a $1.56 million supersedeas bond (as required by Mississippi law) would effectively bankrupt the national organization bringing all of its activities throughout the United States to an immediate and indefinite halt. In short, the NAACP's financial condition was so precarious that execution of the judgment or posting of the bond would have entailed the virtual disappearance of the NAACP as a functional entity.

MAP, which operates the Headstart Program in Mississippi, providing breakfasts and services to over 5,000 small children and employing over 1,000 persons, demonstrated by affidavit that payment of the state court judgment or posting of the bond would exhaust all of MAP's available assets and revenues, requiring the cessation of the Headstart Program in Mississippi. The individual state court defendants who are jointly and severally liable for the entire amount of the judgment would obviously lose all their assets and property if the judgment were executed against them. In these circumstances, we discern no abuse of discretion in the district court's finding of irreparable injury.

The third requirement for entry of a preliminary injunction is that the prospective harm to the plaintiffs must outweigh the injury to the defendants caused by the injunction. In this case the state court judgment is earning interest at the lawful rate during the pendency of the appeal in the Mississippi courts and the district court ordered the federal plaintiffs to post a bond in the amount of $110,000 to protect the federal defendants should they subsequently be found to have been wrongfully en-

joined. The district court found these provisions adequate to the protection of the federal defendants' pecuniary interests. Given the NAACP's impaired financial condition in 1976, the district court found no heightened risk of insolvency attendant on delay. Further, as the district court's order permitted enforcement of those parts of the state court's injunction prohibiting violence, threats, or other coercion, the federal defendants are protected against any conduct by the federal plaintiffs lying outside the bounds of constitutional privilege. The district court did not abuse its discretion in concluding that the federal defendants would suffer no serious injury from issuance of the federal injunction.

Finally, the district court found that issuance of its injunction was in the public interest. We find no abuse of discretion here for it is well established that the public has a vital interest in the vigorous and free discussion of public issues. *See, e. g., Machesky v. Bizzell, supra.*

## II.

We next consider the district court's order which reinforces and effectuates those parts of the preliminary injunction of December 15, 1969 enjoining the state court plaintiffs from interfering with the funds claimed by the State Conference and Local Branches on deposit in the defendant state banks. Appellants have advanced a lengthy and elaborate argument designed to demonstrate either that the December 15 injunction never took effect due to the failure of the federal plaintiffs to post a necessary bond or that the December 15 injunction was necessarily dismissed when the injunction of June 9, 1970, along with the amended complaint of December 15, 1969, was dismissed for lack of subject matter jurisdiction pursuant to our decision in *Henry I.* These contentions are without merit.

First, the December 15 injunction required the posting of a bond by the federal plaintiffs only upon withdrawal of the funds on deposit in the state banks; those portions of the injunction barring interfer-

ence with these funds by the federal defendants were in no way conditioned on the posting of a bond. Second, the court in *Henry I* took great pains to explain that the December 15 injunction was not at issue in that appeal and was, therefore, unaffected by our decision therein. *See Henry I*, 444 F.2d 1300, 1305–06 & nn. 4, 5, 6, 7, 8 & 9. After carefully distinguishing the December 15 injunction and the June 9 injunction, the court indicated that the federal defendants had never appealed the entry of the former injunction and that the discussion of the December 15 order had been

> for only two reasons: (1) to set the stage for our discussion of the June 9, 1970 order, and (2) to notify the parties that the December 15 interlocutory injunction against the attachments remains standing, pending a final determination by the district court of the many difficult questions raised by the original plaintiffs' procedural due process claim . . . . As we proceed to what really concerns us on this appeal, therefore, we understand that the Banks and the state court complainants are presently preliminarily enjoined from withholding or causing to be withheld . . . funds belonging to the original plaintiffs deposited in the defendant Banks.

*Id.* at 1306. In subsequently implementing this court's judgment by vacating the June 9 order, the district court specifically referred only to the amended complaint filed in December 1969, not to the original complaint filed in November 1969.

Appellants' present contention that the amended complaint of December 1969 in all respects superseded the original complaint of November 1969 so that dismissal of the former necessarily involved dismissal of the latter is contrary to the clear understanding of this court and the district court regarding the separate status of the complaints and the orders based thereon. *See Henry v. First National Bank of Clarksdale*, N.D. Miss., 1976, 424 F.Supp. 633, 636. There is no reason now for us to revise our earlier appreciation of the continued vitality of the December 15 injunction.

Given that the December 15 order has been uninterruptedly in force since its entry, the remaining issues concerning the issuance of the order in October 1976 are readily resolved. The district court clearly had continuing jurisdiction over the issues and parties originally involved in 1969. As the December 15 injunction has been continuously in effect since 1969, any attempt by the federal defendants to interfere with the funds in the state banks would plainly be in derogation of an outstanding order of the federal court. The subsequent finding by the state Chancery Court that the funds in the state banks belong to the national NAACP and the Chancery Court's order directing the banks to pay the funds over to the state court plaintiffs could not affect the prior order of the federal district court.

Section 2283, the Anti-Injunction Act, was no bar to the entry of the 1976 order in these circumstances. The section specifically permits stays of state court proceedings by a federal court "where necessary . . . to protect or effectuate its judgments." We conclude that in this case the December 15 preliminary injunction constitutes a judgment for purposes of this exception to the Anti-Injunction Act. *See Doe v. Ceci*, 7 Cir., 1975, 517 F.2d 1203, 1206–07; Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4226, at 347 (1978); *see also Swann v. Charlotte-Mecklenburg Board of Education*, 4 Cir., 1974, 501 F.2d 383; *Montgomery County Board of Education v. Shelton*, N.D.Miss., 1970, 327 F.Supp. 811. In explaining the purpose of this exception the Supreme Court has stated that "some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line Rail Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970).

The failure at this juncture to enforce the December 15 preliminary injunction would unquestionably impair the district court's ability to resolve the issues underlying that

injunction, for the state court judgment expressly authorizes the state court plaintiffs to execute the damages award against the funds which are the subject of the earlier federal dispute. Moreover, the state banks, defendants in both the federal and state actions, have been placed in the unacceptable position of being ordered by the state Chancery Court to do precisely what the federal injunction orders them not to do: pay the disputed funds over to the state court plaintiffs. The only satisfactory resolution of this unseemly tension lies in delaying execution of the state court judgment until the prior federal injunction has been removed.

There is no basis for federal abstention under the *Younger* doctrine or any other theory in these circumstances surrounding the entry of an order to protect an extant prior injunction of the federal court. The substantive merits of the December 15 injunction are not before us on the instant appeal. Accordingly, we conclude that the district court acted properly in entering the order in October 1976 preventing action in derogation of the December 15 injunction.

### III.

Finally, we consider the order entered on behalf of the United States as intervenor enjoining the state court plaintiffs from executing the state court judgment against or otherwise interfering with the funds or property in the possession of MAP received from the United States exclusively for the purpose of operating a Headstart Program in Mississippi. The United States petitioned to intervene in this case pursuant to Rule 24, Fed.R.Civ.P., 28 U.S.C.,[7] claiming that its property interest in all funds granted to MAP could not be subjected to judicial process in the Mississippi state courts without the consent of the United States. The district court allowed intervention and granted preliminary relief.

Before addressing the merits of the preliminary injunction, we decide several preliminary questions. First, the district court had jurisdiction under 28 U.S.C. § 1345[8] over the claims of the United States in this action. Second, the district court committed no error in allowing the United States to intervene as a party plaintiff. Appellants' sole contention on appeal regarding the grant of the United States' application to intervene is that the application was not timely. The determination of the timeliness of a request to intervene rests within the sound discretion of the district court and will be disturbed on appeal only if there has been an abuse of discretion. *See, e. g., Stallworth v. Monsanto,* 5 Cir., 1977, 558 F.2d 257; *McDonald v. E. J. Lavino Co.,* 5 Cir., 1970, 430 F.2d 1065; *Smith Petroleum Service, Inc. v. Monsanto,* 5 Cir., 1970, 420 F.2d 1103; Wright, Miller

---

**7.** Rule 24 provides in pertinent part:
 **Rule 24. Intervention**
 **(a) Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 **(b) Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

**8.** 28 U.S.C. § 1345 provides:
 **§ 1345. United States as plaintiff**
 Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

& Cooper, Federal Practice and Procedure: Civil § 1916 (1978).

There was no abuse of discretion. The United States moved to intervene in the federal court action on October 7, 1976, a mere six days after the filing of the supplemental and amended complaint had initiated proceedings concerning the state Chancery Court's judgment and decree of August 19, 1976. The intervention by the United States caused no delay in the federal action or prejudice to the appellants.

■ Third, the Anti-Injunction Act, 28 U.S.C. § 2283, does not apply when the United States seeks to stay proceedings in a state court. "The frustration of superior federal interests that would ensue from precluding the Federal Government from obtaining a stay of state court proceedings, except under the severe restrictions of 28 U.S.C. § 2283, 28 U.S.C.A. § 2283, would be so great that we cannot reasonably impute such a purpose to Congress from the general language of 28 U.S.C. § 2283, 28 U.S.C.A. § 2283, alone." *Leiter Minerals, Inc. v. United States,* 352 U.S. 220, 226, 77 S.Ct. 287, 291, 1 L.Ed.2d 267 (1957); *N.L.R.B. v. Nash-Finch Co.,* 404 U.S. 138, 92 S.Ct. 373, 30 L.Ed.2d 328 (1971); *N.L.R.B. v. Roywood Corp.,* 5 Cir., 1970, 429 F.2d 964.

Fourth, we reject appellants' contention that the issuance of this injunction by the district court was barred by the *Younger* doctrine. In our discussion of the district court's first order we explained our view that *Younger* principles do not control in the circumstances of this case, where neither the state nor important state interests are involved. Moreover, there is an additional consideration when the United States as sovereign is the party seeking injunctive relief in a federal court. The same factors that militate against application of section 2283 to the national government also counsel against extension of the *Younger* doctrine to suits by the United States.

■ Having concluded that there was no bar to the entry of a preliminary injunction in favor of the United States, we now consider the injunction itself. As discussed above in our consideration of the first injunction, the standard of appellate review of a preliminary injunction is simply whether there has been an abuse of discretion by the district court. With regard to the four requirements for a preliminary injunction, the district court found, first, that the United States was likely to succeed on the merits of its claim. It is well established that a property interest of the United States cannot be subjected to judicial process without its consent. *Maricopa County v. Valley National Bank,* 318 U.S. 357, 362, 63 S.Ct. 587, 589, 87 L.Ed. 834 (1943); *United States v. Alabama,* 313 U.S. 274, 281–82, 61 S.Ct. 1011, 1014, 85 L.Ed. 1327 (1941). "A proceeding against property in which the United States has an interest is a suit against the United States." *Id.* at 282; 61 S.Ct. at 1014.

■ The only question, therefore, is whether the United States had a property interest in MAP's funds and property sufficient to invoke the above principle. The United States claimed an equitable lien in such funds and property. We find that the district court did not abuse its discretion in deciding that the United States was likely to succeed in its claim that it had an equitable interest in MAP's property and that this interest could not be subjected to state judicial process without the consent of the United States.

It is undisputed that virtually all of MAP's assets derive from grants made through the Department of Health, Education and Welfare under the Headstart-Follow Through Act, 42 U.S.C. § 2928, *et seq.* (1976), and predecessor statutes authorizing funding for qualified Headstart Programs. The Act carefully delineates the purposes for which grant funds may be expended. Although MAP is a private, nonprofit corporation and not a federal agency, extensive and detailed regulations govern its expenditure of federal funds in order to ensure the use of grant funds for approved purposes. *See* 45 C.F.R. Part 74 (1977). The United States retains a reversionary interest in all grant funds and in all property purchased with such funds that can no

longer be used for the narrow purposes specified in the Act and regulations. *Id.* A Headstart grantee must undergo an annual audit to determine whether it has spent grant funds in a fashion consistent with "applicable laws, regulations and directives." 45 C.F.R. § 1301.3–3(a).

 The district court could properly conclude that the United States' continuing interest in grant funds met the criteria for creation of an equitable lien. *See Avco Delta Corp. Canada Ltd. v. United States,* 7 Cir., 1973, 484 F.2d 692, 703, *cert. denied sub nom. Canadian Parkhill Pipe Stringing, Ltd. v. United States,* 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 490 (1974); *Citizens Co-Op Gin v. United States,* 5 Cir., 1970, 427 F.2d 692, 695; *Morrison Flying Service v. Deming National Bank,* 10 Cir., 1968, 404 F.2d 856, 861, *cert. denied,* 393 U.S. 1020, 89 S.Ct. 628, 21 L.Ed.2d 565 (1969). The equitable as well as the legal property interests of the United States enjoy immunity from unconsented judicial process. *See Blake Construction Co. v. American Vocational Assoc., Inc.,* 1969, 136 U.S.App.D.C. 6, 419 F.2d 308, and cases cited.

With regard to the other criteria for issuance of a preliminary injunction, the United States has adequately demonstrated that it would suffer irreparable harm from the destruction of its Headstart grantee in Mississippi. MAP provides food, medical and other services to roughly 5,000 needy children. Execution of the state damage award against MAP would effectively eliminate the Headstart Program in Mississippi for the year or longer it would take to establish a new grantee. Providing necessary aid to these children represents an important national policy which would be severely frustrated by execution of the state judgment. The district court did not abuse its discretion in finding that the important public interests implicated in the Headstart Program outweighed the interest of the state court plaintiffs in immediate execution of the state judgment against MAP.

*Conclusion*

Having carefully examined each of the preliminary injunctions entered by the district court and having found that each satisfies the requirements for issuance of a preliminary injunction and that there exists no extrinsic bar to the entry of any of the injunctions, we affirm the district court as to each of the orders. We have also considered appellants' other contentions and find them without merit. The judgment is, therefore,

AFFIRMED.