Woodey B. SEARLE and Vonetta Searle, Randy B. Searle and Vickie Searle, Rance W. Searle and Gail Searle, Rhett A. Searle and Tony Searle, Plaintiffs and Appellants,

v.

Lonnie JOHNSON and the Humane Society of Utah, Defendants and Respondents.

No. 19828.

Supreme Court of Utah.

Oct. 22, 1985.

Gayle F. McKeachnie, Clark B. Allred, Vernal, for plaintiffs and appellants.

Kim R. Wilson, Craig S. Cook, Salt Lake City, for defendants and respondents.

STEWART, Justice:

This is an appeal from a summary judgment granted by the district court in favor of defendants. We affirm.

This case is here for the second time. The facts are set forth in our prior opinion in *Searle v. Johnson,* Utah, 646 P.2d 682 (1982). Briefly, they are as follows. The plaintiffs, owners of a business in Uintah County, sued the defendants for intentional interference with plaintiffs' prospective ec-

onomic advantage for conducting a media campaign to discourage tourists from visiting Uintah County. The defendants organized a campaign to increase public awareness of conditions at the local dog pound, hoping to thereby increase pressure on government officials to make improvements.

The trial court granted defendants' summary judgment motion stating that the defendants' actions were privileged under the First Amendment. *Searle*, 646 P.2d at 683. We reversed and remanded, holding that the defendants' campaign constituted a secondary boycott and that a secondary boycott intended to pressure the disinterested third party plaintiffs into supporting defendants' political position was not protected by the First Amendment. *Id.* at 688–89. After we issued our opinion, the United States Supreme Court issued its opinion in *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982). On the basis of that opinion, the trial court again granted the defendants' motion for summary judgment.

In *Claiborne Hardware*, black individuals and organizations boycotted white merchants for seven years. The aim of the boycott was to secure compliance by civic and business leaders with a "lengthy list of demands for equality and racial justice." *Id.* at 907, 102 S.Ct. at 3422. The boycott was largely peaceful, but some boycott leaders advocated violence, and several boycott supporters committed violent acts to further the boycott.

Seventeen of the boycotted merchants filed suit. The Mississippi Chancery Court awarded injunctive relief and damages on several theories, including a common law tort theory.[1] The Mississippi Supreme Court sustained the Chancery Court's imposition of liability on the common law tort theory, holding that because the violent acts committed by boycott supporters contributed to the success of the boycott, the

entire boycott was illegal. *Id.* at 894–95, 102 S.Ct. at 3415–16.

The United States Supreme Court reversed. 458 U.S. 886, 102 S.Ct. at 3409 (1982). The Court held that the defendants' nonviolent, politically motivated conduct was protected by the First Amendment. *Id.* at 915, 102 S.Ct. at 3426.

First, the Court found that the boycott "clearly involved constitutionally protected activity" because it involved the elements of "speech, assembly, association, and petition." *Id.* at 911, 102 S.Ct. at 3424. The Court recognized that boycott leaders used "the 'threat' of social ostracism" to convince other blacks to join the boycott, but concluded that "[s]peech does not lose its protected character, however, simply because it may embarrass others or coerce them into action." *Id.* at 910, 102 S.Ct. at 3424. The Court also recognized that the defendants intended that the boycotted merchants would sustain economic injury as a result of the defendants' campaign. *Id.* at 914, 102 S.Ct. at 3426. However, the Court focused on the *purpose* of the defendants' boycott of the white businesses. It noted that "[t]here is no suggestion that the ... defendants were in competition with the white businesses or that the boycott arose from parochial economic interests." *Id.* at 915, 102 S.Ct. at 3426 (*quoting Henry v. First National Bank of Clarksdale*, 595 F.2d 291, 303 (5th Cir. 1979) (earlier separate proceeding arising from same boycott involved in the instant case)). Rather, the purpose of the boycott was to protest racial discrimination in the town. *Id.* Stating that a nonviolent, politically motivated boycott is constitutionally protected *id.*, the Court held that the nonviolent elements of the defendants' boycott, undertaken to protest racial discrimination, were protected speech and were not actionable under state tort law. *Id.*

The Court recognized that states have broad powers to regulate economic activity.

---

**1.** The common law tort theory used to support liability in *Claiborne Hardware* was malicious interference with the plaintiffs' businesses. 458 U.S. at 891, 102 S.Ct. at 3414. The common law tort theory advanced by plaintiffs in the instant case is intentional interference with plaintiffs' prospective economic advantage. *See Leigh Furniture and Carpet Co. v. Isom*, Utah, 657 P.2d 293 (1982).

However, "[t]he right of the States to regulate economic activity could not justify a complete prohibition against a nonviolent, politically motivated boycott designed to force governmental and economic change and to effectuate rights guaranteed by the Constitution itself." 458 U.S. at 914, 102 S.Ct. at 3426.

*N.A.A.C.P. v. Claiborne Hardware Co.* is directly applicable and controls the outcome of this case. Certainly the defendants here were engaging in activity protected by the First Amendment. The members of the Humane Society associated together for the purpose of conducting a media campaign, using both the written and spoken word, to inform and persuade the public. Their purpose was political. Civil officials were the target of the campaign. The defendants sought "to force governmental and economic change." *Id.* at 914, 102 S.Ct. at 3426.

The petitioners have asserted no governmental interest sufficient "to prohibit peaceful political activity such as that found in the boycott in this case." *Id.* at 913, 102 S.Ct. at 3425. In addition, state tort law is not the type of "[g]overnmental regulation that has an incidental effect on First Amendment freedoms [that] may be justified in certain narrowly defined instances." *Id.* at 912, 102 S.Ct. at 3425. Thus, even if the state tort law theory relied upon by plaintiffs advances a compelling state interest, *c.f., id.* at 912 n. 47, 102 S.Ct. at 3425 n. 47, it is too broad to be constitutionally applied in this case. "[T]he right to petition is of such importance that it is not an improper interference [with a prospective economic advantage, *see Missouri v. National Organization for Women, Inc.,* 620 F.2d 1301, 1316 (8th Cir.), *cert. denied,* 449 U.S. 842, 101 S.Ct. 122, 66 L.Ed.2d 49 (1980) ] even when exercised by way of a boycott." *Claiborne Hardware,* 458 U.S. at 914 n. 48, 102 S.Ct. at 3426 n. 48 (*quoting Missouri v. N.O.W.,* 620 F.2d at 1317).

Finally, the fact that the political motivation of the defendants in *Claiborne Hardware* was different from that of the defendants in the instant case has no effect on this Court's decision. As the California Supreme Court recently stated:

> As in *Claiborne Hardware,* however, defendants' activities constitute a "politically motivated boycott designed to force governmental and economic change" (458 U.S. at p. 914 [102 S.Ct. at p. 3426] ), ... and the fact that the change which they seek bears upon environmental quality [or the inhumane treatment of animals] rather than racial equality, can hardly support a different result. On the contrary, we are precluded by the First Amendment itself from gauging the degree of constitutional protection by the content or subject matter of the speech: "[T]here is an 'equality of status' in the field of ideas" (*Police Department of Chicago v. Mosley* (1972) 408 U.S. 92, 95–96 [92 S.Ct. 2286, 2290, 33 L.Ed.2d 212] ...).

*Environmental Planning and Information Council v. Superior Court,* 36 Cal.3d 188, 203 Cal.Rptr. 127, 680 P.2d 1086, 1091 (1984).

We conclude that defendants are entitled to summary judgment as a matter of law.

Affirmed. Costs to respondents.

HALL, C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.