Chilton M. WILKINS, Appellant,

v.

Beverly W. ROGERS, Nathan Rosen, Carl Knight, Louis Rosen, Harry M. Lightsey, Sr., L. Marion Gressette, Clyde A. Eltzroth, John Hamilton Smith, Sidney B. Jones, Jr. and Barbara Waring, Appellees.

Beverly W. ROGERS, Appellee,

v.

Chilton M. ROGERS (now Wilkins), Appellant.

Nos. 77–1588, 77–1938.

United States Court of Appeals, Fourth Circuit.

Argued June 5, 1978.

Decided Aug. 2, 1978.

William Y. Wilkins, Winston-Salem, N. C., for appellant in 77–1588 and 77–1938.

Bill R. Craig, Hartsville, S. C. (Floyd & Craig, Hartsville, S. C., on brief), for appellant in 77–1938.

Michael R. Geeson, Jr., Winston-Salem, N. C., on brief, for appellant in 77–1588.

Ellison D. Smith, IV, Charleston, S. C., for appellees Nathan Rosen, Beverly W. Rogers, Sidney B. Jones, Jr., Barbara Waring and John Hamilton Smith.

Katherine W. Hill, Asst. Atty. Gen., Columbia, S. C., for appellees Clyde A. Eltzroth and Louis Rosen.

Lawrence M. Gressette, Jr., St. Matthews, S. C., on brief, for appellee L. Marion Gressette.

F. Lee Prickett, Jr., St. Matthews, S. C., on brief, for appellee L. Marion Gressette and appellee in 77–1938.

Thomas E. McClutchen and Herbert W. Hamilton, Columbia, S. C. on brief, for appellee Harry M. Lightsey, Sr.

L. Marion Gressette, Gressette & Gressette, St. Matthews, S. C., on brief, for appellee in 77–1938.

Before WIDENER and HALL, Circuit Judges, and HOFFMAN,* District Judge.

* Senior District Judge for the Eastern District of Virginia, sitting by designation.

PER CURIAM:

These appeals arise from six years of litigation in the courts of South Carolina between Chilton M. Rogers Wilkins and her former husband, Beverly W. Rogers. Wilkins alleges that Rogers, three members of the South Carolina judiciary, four private attorneys, a county sheriff, and a former friend have conspired to defraud her and deprive her of property. Eight issues are presented for review, including the scope of federal jurisdiction over domestic relations disputes, the abstention doctrine, substantive civil rights claims under 42 U.S.C. §§ 1983, 1985(3), and 1986, and several procedural matters.

Wilkins and Rogers separated on October 27, 1970, after twenty years of marriage, and Wilkins obtained a divorce decree in the Virgin Islands on February 15, 1972. Three separate lawsuits were commenced in the South Carolina courts. The first ("Suit 1") was instituted by Rogers, to determine title to a parcel of real estate purchased during the marriage. The second ("Suit 2"), instituted by Wilkins, was for repayment of money allegedly advanced to Rogers during the marriage, and for support and maintenance of the couple's children. The third ("Suit 3"), also instituted by Wilkins, was a "claim-and-delivery" action for return of personal property allegedly owned by Wilkins but kept by Rogers after the divorce.[1]

Wilkins' claims against Nathan Rosen, Gressette, Smith, and Jones, four attorneys who represented Rogers during different stages of the litigation, arise from these suits. In particular, she alleges that Nathan Rosen failed to serve her with a copy of the complaint in Suit 1; a summons only was served upon defendant Waring, whose relationship to Wilkins is unclear, at Wilkins' place of business. Although an order of default was taken against Wilkins in Suit 1, no judgment was entered. Rather, Wilkins' attorney entered into a stipulation

1. Suit 3 was not removed to federal court and is not before us; however, the claims against defendant Knight arise from his involvement in the "claim-and-delivery" action.

with Rogers' new counsel that the suit be consolidated with the two suits instituted by Wilkins and tried before defendant Lightsey, a retired Special Master in Equity. Lightsey found in Wilkins' favor on the issue of ownership of the real estate and on the issues in the claim-and-delivery action. He found in Rogers' favor on the claims for money allegedly owed to Wilkins. Both sides filed exceptions to the Special Master's report. In the meantime, Rogers petitioned the Court of Common Pleas of Dorchester County for an injunction restraining Wilkins from removing timber from the real estate involved in Suit 1 until a decision had been rendered on the appeal. The judge of that court, defendant Louis Rosen, a brother of Nathan Rosen, granted Rogers' motion for an injunction, and remanded the case to a Special Referee for further findings. Wilkins took an appeal to the South Carolina Supreme Court. Judge Rosen then disqualified himself from further participation in the case, and Wilkins' motion to dismiss Suit 1 was heard by defendant Eltzroth. Judge Eltzroth found that, notwithstanding defendant Nathan Rosen's failure to serve Wilkins with a complaint in the first suit, she had waived any jurisdictional objections through counsel's stipulation, above noted, and by her active participation in the three suits. Judge Eltzroth denied Wilkins' motion to dismiss.

On June 7, 1976, Wilkins removed Suit 1 to the United States District Court for the District of South Carolina, invoking federal question and diversity of citizenship jurisdiction. 28 U.S.C. § 1441(a). On October 4, 1976, Wilkins removed Suit 2, invoking the civil rights removal statute, 28 U.S.C. § 1443(1), and also alleging original jurisdiction under the federal question and diversity of citizenship statutes. 28 U.S.C. §§ 1331(a), 1332. In the second petition for removal, she also sought to have the district court consider the constitutionality of several South Carolina domestic relations statutes, enjoin the ongoing South Carolina litigation, and enjoin the enforcement of the state court injunction forbidding her from removing timber from the land which was the subject of Suit 1. Wilkins also instituted an action under 42 U.S.C. §§ 1983, 1985(3), and 1986, naming Rogers, Nathan Rosen, Gressette, Smith, Jones, Waring, Lightsey, Louis Rosen, Eltzroth, and Knight as defendants. She demanded $315,000 in damages.

In the first district court action, 77–1938, Judge Simons dismissed Wilkins petition for removal and remanded the case to the Dorchester County Court of Common Pleas. In the second district court action, 77–1588, Judge Hemphill dismissed Wilkins' complaint in its entirety, finding that removal was not authorized by the civil rights removal statute, that abstention was proper where Wilkins requested interference with the ongoing South Carolina litigation, and that Wilkins' claims for damages were not cognizable under 42 U.S.C. §§ 1983, 1985(3) or 1986. Wilkins made a motion for reconsideration, and then moved that Judge Hemphill recuse on grounds of bias and prejudice. Judge Hemphill denied the motion to reconsider and held that the motion for recusal was not properly raised. Wilkins appealed the decisions of both district courts, briefing eight issues, and we consolidated the cases for argument.

In the first appeal, 77–1938, we hold that we have no jurisdiction to review the district court's order remanding Suit 1 to the Dorchester County Court of Common Pleas. In the second appeal, 77–1588, we affirm the decision of the district court and find the assignments of procedural error to be without merit.

*First.* Suit 1, which Wilkins separately removed to district court, involved a dispute over title to real estate. Rogers had instituted the suit in state court on November 27, 1970; Wilkins' petition for removal was filed on June 7, 1976. On May 25, 1977, Judge Simons remanded the case to the Dorchester County Court of Common Pleas after finding that the petition was not timely filed, 28 U.S.C. § 1446(b), and thus the suit had been "removed improvidently and without jurisdiction." 28 U.S.C. § 1447(c). The issue before us is whether we have jurisdiction to review the remand order in light of *Thermtron Products, Inc.*

*v. Hermansdorfer,* 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976).

■ 28 U.S.C. § 1447(d) provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . ." Wilkins argues that, notwithstanding this language, *Thermtron* opens the door to review of any remand order which is alleged to be improper. We decline to read *Thermtron* this broadly. *Thermtron* held only that remand orders issued on grounds not authorized by 28 U.S.C. § 1447(c) are appealable; the Supreme Court, however, reemphasized that "remand orders issued under § 1447(c) and invoking the grounds specified therein—that removal was improvident and without jurisdiction—are immune from review under § 1447(d)." 423 U.S. at 346, 96 S.Ct. at 590. The invocation of 28 U.S.C. § 1447(c) is proper where the district court finds that the petition for removal was not timely filed. *Jennings v. Cantrell,* 392 F.Supp. 563 (E.D.Tenn.1974); *Perrin v. Walker,* 385 F.Supp. 945 (E.D.Ill. 1974). Therefore, we are governed by 28 U.S.C. § 1447(d) and have no jurisdiction over this appeal, 77–1938.

Finding that we lack jurisdiction in this matter, it is ordered that Wilkins' related motions, to dissolve and set aside *lis pendens,* for temporary order of injunction, for an order authorizing Wilkins to enter upon and use land, for correction or modification of the record, and motion to strike, are hereby denied.

*Second.* While the petition for removal of Suit 1 was still pending before Judge Simons, Mrs. Wilkins attempted to remove Suit 2, a claim for repayment of money allegedly advanced to Rogers during the marriage and for support and maintenance of the couple's children. Wilkins alleged that she was a victim of unconstitutional sex-based discrimination sanctioned by the South Carolina court system. Judge Hemphill treated the action as a petition for removal under the Civil Rights Removal Statute, 29 U.S.C. § 1443(1), one of the many jurisdictional grounds cited by Wilkins. He dismissed this portion of the complaint after finding that removal was not authorized by the statute.[2]

■ In *Georgia v. Rachel,* 384 U.S. 780, 792, 86 S.Ct. 1783, 1790, 16 L.Ed.2d 925 (1966), the Supreme Court set the parameters for removal under § 1443(1), stating that it must appear that the right allegedly denied the removal petitioner arises under a federal law " . . . providing for specific civil rights stated in terms of *racial equality.* . . . " (Emphasis added) *See also City of Greenwood v. Peacock,* 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966). Allegations of sexual discrimination are not cognizable under § 1443(1). *E. g., Milligan v. Milligan,* 484 F.2d 446 (8th Cir. 1973); *Delavigne v. Delavigne,* 402 F.Supp. 363 (D.Md.1975), *aff'd* 530 F.2d 598 (4th Cir. 1976). We thus conclude that the district court's dismissal of Wilkins' petition to remove under § 1443(1) was proper. Wilkins now claims, however, that she intended to invoke original jurisdiction under 28 U.S.C. §§ 1332 and 1331(a), to maintain these claims, and that the district court misconstrued her complaint. She states that additional claims for money have been added to the demands made in the state court action, and these additional claims are not being litigated in the South Carolina courts. We note, however, that the additional claims involve continued support and maintenance of the litigants' children, and thus the entire cause of action may still be characterized as one for partition of the marital estate.

■ It has long been held that the whole subject of domestic relations belongs to the laws of the state and not to the laws of the United States. *Ex parte Burrus,* 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890). Thus, original jurisdiction of suits primarily involving domestic relations is improper, notwithstanding that the parties are residents of different states. *E. g., Alba-*

---

**2.** Although none of the parties has raised this issue, we note that § 1443(1) provides for removal of a state action only by the defendant in that action; Mrs. Wilkins was the plaintiff in Suit 2.

nese v. Richter, 161 F.2d 688 (3rd Cir. 1947), cert. denied 332 U.S. 782, 68 S.Ct. 49, 92 L.Ed. 365 (1947). And, such disputes do not present a federal question, notwithstanding allegations of sexual discrimination. Milligan v. Milligan, supra. Therefore, original jurisdiction over Wilkins' claims does not lie.

■ Third. Judge Hemphill abstained from ruling on the constitutionality of a South Carolina statutory scheme which eliminates a wife's right to dower if she is found to have deserted her husband. Code of Laws of S.C. §§ 21–5–330 to 21–5–360 (1976), formerly §§ 19–123 to 19–126 (1962). The statutes in question were used to support the state court's injunction against the removal of timber from property claimed by both Wilkins and Rogers. The injunction continues while both parties appeal lower court rulings. Without expressing an opinion on the validity of the statutes, we find that abstention was correct. Generally, abstention is advisable where the resolution of pending state litigation might eliminate the constitutional issue and terminate the litigation. See Baggett v. Bullitt, 377 U.S. 360, 375–76, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). If Wilkins ultimately prevails in the state courts on the issue of ownership, a determination of the constitutional validity of these statutes would be unnecessary. If she loses on the merits, the constitutional issue can be decided by the South Carolina Supreme Court and then, on certiorari, the United States Supreme Court. Therefore, the district court's decision to abstain was proper.

■ Fourth. Wilkins contests the district court's refusal to enjoin the ongoing South Carolina litigation on all three claims and refusal to order dissolution of the injunction against timber removal. In Lynch v. Snepp, 472 F.2d 769, 775–76 (4th Cir. 1973) we held that, before a federal court would enjoin the application of a state court injunction, the plaintiff must conclusively demonstrate that federal intervention is essential to prevent immediate and irreparable injury, and that no adequate state remedy is available. Wilkins has made no such showing. She concedes that Lynch states the general rule to be followed in these cases, but argues that her situation comes within the exception to the general policy of federal nonintervention. She claims that she is being subjected to harassment, bad faith, and a fraudulent scheme engendered by Rogers but participated in by the South Carolina court system, to deprive her of money and property. 472 F.2d at 775–76. But there is absolutely no evidence to support her bare allegations, and to reverse the district court's decision to abstain would exalt pleading form over substance. The record demonstrates that Wilkins is simply dissatisfied with the results in the state court proceedings to date. If she remains dissatisfied at the conclusion of those proceedings, she may avail herself of South Carolina's appellate remedies. We therefore affirm the district court's decision not to intervene.

Fifth. Judge Hemphill dismissed all of Wilkins' claims under 42 U.S.C. §§ 1983, 1985(3), and 1986. We find that dismissal in these circumstances was proper.

■ § 1985(3) (the Ku Klux Klan Act) and its companion provision, § 1986, are clearly inapplicable, in that they require some sort of discriminatory conspiracy, Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), and no evidence has been produced which would support such a finding.[3]

■ Wilkins' claim for damages against three South Carolina judges under 42 U.S.C. § 1983 must fail because those officials are absolutely immune from damage liability. Pierson v. Ray, 386 U.S. 547,

---

**3.** Racial discriminatory animus is clearly within the contemplation of the statute. In Griffin, the Supreme Court reserved the question of what types of class-based animus other than racial bias would be actionable under § 1985(3), 403 U.S. at 102 and n. 9, 91 S.Ct. 1790; and in view of our holding that Wilkins' allegations of conspiracy are insufficient, we need not decide the issue of whether sex-based discrimination is actionable. See Hughes v. Ranger Fuel Corp., 467 F.2d 6, 9–10, and n. 5 (4th Cir. 1972).

87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). And while this court has held that, in certain extraordinary circumstances, injunctive relief against judicial officers will lie, *Timmerman v. Brown,* 528 F.2d 811 (4th Cir. 1975), this case presents no such circumstances. Both Special Master Lightsey and Judge Rosen have disqualified themselves from further participation, and we find nothing in the record to support an injunction against Judge Eltzroth. On the contrary, the record demonstrates that Mrs. Wilkins is simply dissatisfied with Judge Eltzroth's rulings, and we decline to extend *Timmerman* to these facts.

■■■■■ Wilkins' claims against Rogers, Gressette, Smith, Jones and Waring must fail because those individuals have not acted with the requisite degree of state action necessary under § 1983. *E. g., Jackson v. Metropolitan Edison Company,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). And, while Nathan Rosen and Knight may have acted with requisite state action in their capacities as process servers, *United States v. Wiseman,* 445 F.2d 792 (2d Cir. 1971), they have not deprived Mrs. Wilkins of any right secured to her by the Constitution and laws of the United States. Wilkins alleges that Nathan Rosen failed to serve her with a copy of the complaint in Suit 1, and that Sheriff Knight failed to "make a proper return of service" [4] in Suit 3. But the record indicates that no default judgment was entered against Wilkins in Suit 1; pursuant to a stipulation, she answered and counterclaimed to the complaint. The record also indicates that Rogers filed an answer to Wilkins' complaint in Suit 3, and issue was joined in the consolidated hearing before the Special Master. This is not a case involving "sewer service." Mrs. Wilkins had notice and opportunity to be heard on all claims. In fact, she prevailed in the hearing before the Special Master on both her claim to title of the real

estate and her claim to personal property held by Rogers.

We therefore affirm the dismissal of all claims under 42 U.S.C. § 1983.

■■■■ *Sixth.* Mrs. Wilkins claims that Judge Hemphill denied her due process by failing to afford her the opportunity to argue her cause orally before he ruled on defendants' motion to dismiss. This contention is without merit. Both Fed.R.Civ.P. 78 and South Carolina practice allow motions to be determined "upon brief written statements," *In re Motion Practice,* (D.S.C., Order of June 19, 1974), and this practice is unquestionably constitutional. *United States Fidelity and Guaranty Company v. Lawrenson,* 334 F.2d 464 (4th Cir. 1964); *Spark v. Catholic University of America,* 167 U.S.App.D.C. 56, 510 F.2d 1277 (1975). Judge Hemphill noted in his order that both parties had the opportunity to file extensive briefs before he ruled on the motion for dismissal.

■■■■ *Seventh.* In the same vein, Wilkins argues that she was denied due process by Judge Hemphill's failure to explicitly rule on her motion for an injunction prior to dismissing her complaint. Her theory is that, had the judge denied the motion before ruling on the complaint, she would have had an immediate right of appeal under 28 U.S.C. § 1292(a)(1). Therefore she alleges that she was denied the right to be heard "at a meaningful time." *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). *Fuentes* and the other cases cited by Mrs. Wilkins are simply inapposite, and we are unpersuaded that the delay of two months between the filing of the motion for injunction and the dismissal of the complaint rendered this appeal meaningless.

■■■■ *Eighth.* Finally, Wilkins argues that Judge Hemphill exceeded his authority by denying her motion to reconsider the earlier dismissal after she moved, pursuant to 28 U.S.C. §§ 144 and 455, that he recuse

---

**4.** The allegations concerning Knight are unclear. We are unable to determine whether he failed to serve process on Rogers, or failed to comply with state procedural requirements after service.

himself on grounds of bias.[5] First we note that there is not a trace of substantive evidence to support this extraordinary request, and Judge Hemphill was clearly not required to recuse under the standards of 28 U.S.C. § 455. In addition, the motion for recusal was not filed until six weeks after Judge Hemphill ordered the case dismissed and three weeks after Wilkins made a motion for reconsideration. 28 U.S.C. § 144 requires that a motion for recusal must be made at least ten days before the commencement of the term of court at which the suit is to be entertained. This procedure was not complied with and we find no good cause shown to permit Wilkins to avoid the command of the statute.

For the foregoing reasons, the appeal in 77–1938 is dismissed, and the judgment of the district court in 77–1588 is affirmed.

*Affirmed.*

5. Wilkins alleged that Judge Hemphill was biased because he had once served in the state judiciary with one of the defendants. She also made conclusory allegations that Judge Hemphill was prejudiced against female litigants and against cases brought pursuant to civil rights statutes.