**DISTRICT 28, UNITED MINE WORKERS OF AMERICA, INC., et al., Appellants,**

v.

**WELLMORE COAL CORPORATION et al., Appellees.**

No. 78–1157.

United States Court of Appeals, Fourth Circuit.

Argued March 7, 1979.

Decided Nov. 15, 1979.

Jerry O. Talton, Castlewood, and Walton D. Morris, Jr., Big Stone Gap, Va., for appellants.

Michael M. Mullins (Leslie M. Mullins, Richmond, Va., N. D. Street, Grundy, Va., Hugh P. Cline, Norton, Va., on brief), for appellees.

Before BUTZNER and WIDENER, Circuit Judges, and ROBERT R. MERHIGE, Jr., District Judge for the Eastern District of Virginia, at Richmond, sitting by designation.

MERHIGE, District Judge.

The appellant labor organizations brought suit under 42 U.S.C. section 1983 against three coal companies and a railroad seeking declaratory, injunctive, and monetary relief as a result of the appellees obtaining a number of temporary injunctions in state court resulting in the restriction of appellants' picketing activity. The district court granted appellees' motion to dismiss on the ground that neither the actions of the state courts that issued the injunctions, nor the actions of the appellees in seeking same, impermissibly restricted appellees' First Amendment rights. Concluding that dismissal was appropriate for the reasons hereinafter stated, we affirm.

This action was brought in the United States District Court for the Western District of Virginia by appellants, District 28 of the United Mine Workers of America and local unions 1509, 1374, 7025, 1594, 1641, 6843, 6372, 1762, 2035 and 2274 (hereinafter the "unions").

The appellees are Wellmore Coal Corporation, JAD Coal Company, Inc., A. J. Lambert and Elmer R. Lambert (doing business

as Lambert Coal Company), and Norfolk and Western Railway (hereinafter the "companies"). The record reveals that in December, 1977, the companies secured from various state courts in southwest Virginia four *ex parte* injunctions restricting the activities of the unions. This action followed shortly thereafter.[1] Jurisdiction was properly invoked under 28 U.S.C. section 1343(3).

The hearing was held before the Honorable James Turk, United States District Judge, on the unions' request for a temporary restraining order, at which time the trial judge directed the unions to return to state court and seek appropriate modification of the complained of injunctions. Pursuant to this direction, the unions complied, but to no avail. Meanwhile, the companies moved the district court to dismiss the unions' complaint on jurisdictional grounds and for failure to state a claim for which relief could be granted. On January 5, 1978, the Honorable Glen Williams, United States District Judge, heard the companies' motion to dismiss and granted it, ruling that the state court injunctions did not transgress the unions' First Amendment rights.

### I.

■ The unions raise two arguments on appeal: (1) the district court erroneously considered matters outside the pleadings in deciding the motion to dismiss, and (2) the Court erred as a matter of law in concluding that the injunctions were not offensive to the First Amendment. Succinctly stated, the unions assert that the court below not only improperly treated the motion to dismiss as one for summary judgment, but also that the court misapplied the applicable law to the merits of the unions' cause of action. Because we have concluded that the companies did not act under color of state law,[2] we find it unnecessary to address either of the issues raised by the unions. In order to prevail on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), in a case premised on 42 U.S.C. § 1983, a defendant must satisfy the trial court that there is no set of facts which will support an allegation that he or it (1) acted under color of state law, and (2) deprived plaintiff of a right "secured by the Constitution and laws." In the instant case, we need only consider the first step in the analysis. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Baldwin v. Appalachian Power*, 556 F.2d 241 (4th Cir. 1977).

### II.

Few federal provisions have generated as much litigation as 42 U.S.C. section 1983. Defining the contours of state action therefore is a task that confronts all federal courts with increasing frequency. The precise question is whether the companies, in all traditional respects private actors, assumed the mantle of the state by invoking the judicial processes of the state courts. We hold that resort to state judicial process does not, in the circumstances before us, transform an otherwise private entity into an arm of the state for purposes of 42 U.S.C. section 1983.

■ The unions offer four arguments in support of their contention that judgment of the trial court should be reversed. First, they contend that an allegation, as in the instant case, that the companies acted under color of state law is sufficient to survive a motion to dismiss. In our view, the unions misperceive the role of Rule 12(b)(6). While it is true that this court, in reviewing the Rule 12(b)(6) dismissal, must accept the factual allegations of the complaint, we are not so bound with respect to its legal conclusions. Were it otherwise,

---

1. Although the union originally sought injunctive, declaratory, and monetary relief, the state court's injunctions having long since expired, monetary damages would now be the only suitable remedy.

2. The "under color of state law" requirement of 42 U.S.C. section 1983 has generally been considered to be equivalent to the state action requirement of the Fourteenth Amendment. *See United States v. Price*, 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966).

Rule 12(b)(6) would serve no function, for its purpose is to provide a defendant with a mechanism for testing the legal sufficiency of the complaint.

■ The unions' second argument is, in our view, equally meritless. They label the state court injunctions "unconstitutional prejudgment judicial remedies," and then attempt to invoke the doctrine that requires some form of procedural due process, in certain instances, where private parties invoked the processes of the court to effectuate prejudgment garnishment, attachment, or repossession. The principles, though misplaced, upon which the unions rely are indeed supported by ample Supreme Court authority, *see, e. g., North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), but, in our view, they are nonetheless entirely inapposite to the situation at hand. Such application is appropriate only in the narrow context of a state court or quasi-judicial officer providing prejudgment remedies to a creditor that may cause a deprivation of a debtor's property without due process of law.

■ Third, the unions rely upon the decision of the United States District Court for the Western District of Tennessee in *Rubber Workers v. Custom Craft Manufacturing Co.,* 84 L.R.R.M. 2806 (No. 72–408, Nov. 27, 1972), wherein the court enjoined enforcement of a state court injunction that would have prohibited the plaintiff's picketing activity. The unions argued that, where the state court was the instrument with which the companies infringed their First Amendment freedoms, it is only logical to impute state action to those who invoked the aid of the state court. We neither agree with the decision in *Rubber Workers* nor are we persuaded by the unions' assertions.

This Court has not previously had occasion to specifically address the instant issue. The unions seek a broad interpretation of the scope of state action; one that would widen substantially the pathway to federal court. In the absence of plainly supportive language in the statute or clear inferences of congressional intent, an appellate court must move cautiously in considering an expansion of access to the courts below.

In a case somewhat similar to the instant appeal this court has addressed the scope of state action. In *Wilkins v. Rogers,* 581 F.2d 399 (4th Cir. 1978), we held that appellants former husband had not "acted with the requisite [degree of] state action" by bringing suit in state court, after the two had been divorced, to determine title to a parcel of real estate acquired during their marriage. *Id.* at 405. The per curiam opinion in *Wilkins* offered no analysis of the state action question with respect to the former husband. Evidently the panel saw no need to dwell on a question the answer to which was so readily apparent.

Various other circuits have addressed the question at issue here, and with one significant exception, all have affirmed dismissals for want of state action. *See, e. g., Louisville Area Inter-Faith Committee v. Nottingham Liquors,* 542 F.2d 652, 655 (6th Cir. 1976) (initiation of state court proceedings to enjoin picketing not state action); *Grow v. Fisher,* 523 F.2d 875, 877–79 (7th Cir. 1975) (affirmed dismissal of complaint because no allegation that private defendant conspired with state officials in prior criminal actions); *Hansen v. Ahlgrimm,* 520 F.2d 768, 770–71 (7th Cir. 1975) (no cause of action against lawyer who represented opposing party in prior state contempt proceedings); *Glasspoole v. Albertson,* 491 F.2d 1090, 1091–92 (8th Cir. 1974); *Stevens v. Frick,* 372 F.2d 378, 380–81 (2d Cir.), *cert. denied,* 387 U.S. 920, 87 S.Ct. 2034, 18 L.Ed.2d 973 (1967). In a more recent decision, however, the United States Court of Appeals for the Fifth Circuit enunciated an exception to the general rule. *See Henry v. First National Bank of Clarksdale,* 595 F.2d 291 (5th Cir. 1979). The decision in *Henry* was but the latest chapter in a decade of vigorously contested litigation that involved various civil rights organizations, a group of local merchants from Port Gibson in Clai-

borne County, Mississippi, fifty-six banks and the United States as an intervenor. The federal plaintiff in that case secured a temporary restraining order from the district court enjoining execution of a state court judgment that prohibited further picketing activity and required that they pay the state court plaintiffs 1.25 million dollars in damages and attorneys fees. 595 F.2d at 296–97. In a previous round, in *Henry*, the court had held that there was no state action where a state merely holds open its tribunals to private litigants. *See Henry v. First National Bank of Clarksdale*, 444 F.2d 1300 (5th Cir. 1971). In the latest round, however, the court faced a somewhat different question, in that the state court action had progressed to judgment at the trial level and, under Mississippi procedure, such judgments become executory immediately upon entry. 595 F.2d at 296. The court focused on this distinction and found state action.

> The crucial difference between a private party who has merely filed a civil suit in a state forum and the successful litigant who possesses an immediately enforceable state judgment is that in the latter case the full power and authority of the state can be invoked on behalf of the litigant. It is this exercise of state power that provides state action for purposes of the Fourteenth Amendment and section 1983.

*Id.* at 299. The Court labeled the case "unique," *Id.* at 299, and asserted that the injunction would not "prohibit further proceedings in the state court, but merely delays enforcement of the state Chancery Court's judgment until the Mississippi Supreme Court and, if necessary, the United States Supreme Court, have had an opportunity to review the important constitutional issues presented," *Id.* at 301.

Because the state court injunctions that give rise to the matter before us have expired, we do not have a situation where the power and authority of the state may still be invoked by the companies to the detriment of the unions. It is this critical distinction that renders *Henry* inapposite; and we need not either reject or accept the reasoning of that case in the state action issue.

■ A final argument asserted by the unions is that state action may be imputed to the companies because the complaint alleges that they sought the state court injunctions in bad faith and with improper purpose (i. e., to infringe the unions' First Amendment rights). The unions rely upon an inference derived from the Sixth Circuit's opinion in *Louisville Area Inter-Faith Committee v. Nottingham Liquors, supra.* Although that court found no state action in the defendant's initiation of state court proceedings, it implied that an allegation of bad faith or improper purpose would have altered the result. *Id.* at 655.

■ Plaintiffs' reliance on this implication is in our view misplaced. The reading of the cases cited by the Sixth Circuit in support of its suggestion show that, in this context, state action will lie only where: (1) a federal defendant invoked a state court remedy that he knew to be unconstitutional, and (2) either the defendant was a state officer or the remedy invoked was among those questionable prejudgment remedies used by private creditors. *See Tucker v. Maher*, 497 F.2d 1309, 1313 (2d Cir.), *cert. denied*, 419 U.S. 997, 95 S.Ct. 312, 42 L.Ed.2d 271 (1974), *Rios v. Cessna Finance Corp.*, 488 F.2d 25, 28 (10th Cir. 1973). The unions' allegations do not meet this test. The procedure for obtaining an *ex parte* injunction in Virginia is presumed to be constitutional and a bald allegation in the complaint to the contrary will not elevate to the level of state action the companies' invocation of the procedure.

For the foregoing reasons the judgment of the district court dismissing the unions' complaint is

AFFIRMED.