**Clifford Gene SHEPPARD, J. A. Sheppard and Jewel Sheppard, Plaintiffs,**

v.

**Carl O. MOORE, former Sheriff of Randolph County, Paul Wade Scott, former Deputy Sheriff of Randolph County, Charles Hatley, Agent of the North Carolina State Bureau of Investigation, "Ed" Hunt, Agent of the North Carolina State Bureau of Investigation, Defendants.**

No. C–80–426–G.

United States District Court, M. D. North Carolina, Greensboro Division.

June 5, 1981.

---

Charles A. Lloyd, Smith, Patterson, Follin, Curtis, James & Harkavy, Greensboro, N. C., for plaintiffs.

J. Michael Carpenter, N. C. Dept. of Justice, Raleigh, N. C., Richard L. Vanore, Tuggle, Duggins, Meschan, Thornton & Elrod, Greensboro, N. C., for defendants.

## MEMORANDUM OPINION AND ORDER

HIRAM H. WARD, District Judge.

This matter came before the Court for hearing on May 26, 1981, upon the defendants' motions to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction and failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(1), (2) & (6). Motion of defendants Hatley and Hunt (September 19, 1980) (hereinafter state defendants); Motion of defendants Moore and Scott (December 17, 1980) (hereinafter county defendants). The defendants briefed and argued orally for abstention under the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny and for dismissal

because of plaintiffs' failure to state a claim for which relief could be granted.[1]

At the conclusion of the May 26th hearing, the Court informed the parties that it would dismiss plaintiffs' claim under 42 U.S.C. § 1985 for failure to state a claim upon which relief could be granted. As to the plaintiffs' 42 U.S.C. § 1983 claim, the parties at the hearing argued almost entirely for and against abstention. However, at that time, the record contained insufficient facts for the Court to rule on the abstention issue.

The defendants argued for dismissal of the § 1983 claim also on the basis that the complaint failed to state a claim. However, they concentrated upon deficiencies in the complaint's factual allegations that plaintiffs perhaps could have cured with a more definite statement, Fed.R.Civ.P. 12(e), or an amended complaint, Fed.R.Civ.P. 15. Consequently, the Court determined that dismissal for such deficiencies would be improper and deferred ruling on the § 1983 claim. Since the hearing, the Court has carefully reassessed the complaint in light of the parties' representations at the hearing and the recent Supreme Court case of *Parratt v. Taylor*, —— U.S. ——, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The Court finds a far more serious and, in fact, fatal deficiency and concludes that the plaintiffs fail to state a claim for relief under 42 U.S.C. § 1983.[2]

Plaintiffs' § 1983 claim alleges that the defendants, all law enforcement officers, seized coin, gun and knife collections belonging to the plaintiffs in the spring of 1978. Defendant Moore, then Sheriff of Randolph County, kept custody of the items as part of a pending criminal investigation. Defendant Moore allegedly caused criminal charges to be brought against the plaintiffs as a result of the criminal investigation, which, according to plaintiffs, were termi-

nated sometime later "in generally [sic] favor of the said plaintiffs." Afterwards, the presiding judge of North Carolina Superior Court sitting in Randolph County directed that all items of personal property be returned. The gravamen of the claim is that the defendants "willfully and reprehensibly" "failed and refused" to return items of plaintiffs' property to them. Plaintiffs seek to recover "of the defendants, jointly and severally, the value of the property" withheld willfully from them plus $500,-000.00 each in punitive damages. Complaint First Claim for Relief ¶¶ 4–7 (August 13, 1980). Plaintiffs' second claim for relief complains about the same conduct and seeks the same relief under the conspiracy theory of § 1985. Complaint Second Claim for Relief ¶¶ 8–9.

With their motions to dismiss, the state defendants filed a state superior court order entered in the case of *State of North Carolina v. Clifford Gene Sheppard, James Garner, et al.*, 79 CRS 13888, et al. & 79 CRS 13869, et al., dated September 4, 1979. That order names one of the plaintiffs in this action and refers to the property here involved. It states:

> This matter coming on to be heard upon oral motion of the attorney for the defendants, Clifford Gene Sheppard and James Garner, for the return of certain property confiscated by the Sheriff of Randolph County [defendant Moore] as evidence in the above numbered cases and it appearing to the Court that certain items of personal property belong to various citizens of Randolph County, that the same are no longer needed as evidence in these cases in that the cases have been disposed of and that all property now held by the Sheriff of Randolph County should be returned to its rightful owner,
>
> The Court concludes as a matter of law that all property now held by the Sheriff

---

**1.** None of the parties briefed or argued the Fed.R.Civ.P. 12(b)(2) motions. Upon having reviewed the factual allegations in the complaint and the U.S. Marshal's return of service for each defendant, the Court has determined that the Rule 12(b)(2) motions afford defendants no relief.

**2.** The lack of particularity in the defendants' Rule 12(b)(6) motion is no bar to the Court granting the motion for the reasons stated. *See* 5 C. Wright and A. Miller, *Federal Practice & Procedure* § 1192, p. 38 (1969).

of Randolph County in the above styled cases is to be returned to its rightful owner, other than the defendants in these cases, on or before the 18th day of September, 1979.

IT IS THEREFORE ORDERED AND ADJUDGED that the Sheriff of Randolph County may distribute to any rightful owner his property upon the owner signing a receipt for the property and that the defendants may obtain their property on or after the 19th of September, 1979.

Memorandum of Hatley and Hunt Attachment no. 1 (September 19, 1980).

At the hearing the parties clarified the allegations in the complaint with some of the background information giving rise to the plaintiffs' claims. The events in the complaint arose out of the highly publicized investigation and prosecution of Clifford Gene Sheppard, his brother Phillip and others for a series of burglaries and safecrackings exposed in the spring of 1978. Various law enforcement officers seized the property mentioned in the complaint as part of that investigation. At the hearing the parties revealed that law enforcement officers seized the property in a series of raids made pursuant to search warrants upon the homes of Clifford Gene Sheppard, J. A. Sheppard and Jewel Sheppard. Ultimately, plaintiff (then defendant) Clifford Gene Sheppard was allowed to plead nolo contendre to one of the charges arising out of the investigation. The other charges were dismissed.[3] Thus, from the complaint itself and the further representations of plaintiffs' attorney at the hearing, the § 1983 claim obviously seeks to remedy the defendants' willful withholding and refusal to re-

turn the plaintiffs' property without due process under color of state law in violation of the Fourteenth Amendment.[4]

In *Parratt v. Taylor*, —— U.S. ——, 101 S.Ct. 1908, 68 L.Ed.2d 420, the Supreme Court explained and revitalized the elements of a § 1983 claim alleging a Fourteenth Amendment deprivation of property. The opinion engrafted no new element into the Fourteenth Amendment or § 1983 but merely stressed that there are three essential components of a due process claim. Here, as in *Parratt*, the Court accepts that the plaintiffs' claim properly alleged that they (1) have suffered a deprivation of property at the hands of the defendants and (2) that the defendants acted under color of state law. To this extent, the plaintiffs have satisfied the prerequisites of a valid Fourteenth Amendment claim. However,

*[n]othing in that amendment protects against all deprivations of life, liberty or property by the State. The Fourteenth Amendment protects only against deprivations "without due process of law."* Baker v. McCollan, [443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433, 442 (1979)]. *Our inquiry therefore must focus on whether the [plaintiffs have] suffered a deprivation of property without due process of law. In particular, we must decide whether the tort remedies which the State of [North Carolina] provides as a means of redress for property deprivations satisfies [sic] the requirements of procedural due process.*

*Parratt v. Taylor*, —— U.S. at ——, 101 S.Ct. at 1913 (emphasis added).

■ Therefore, the Court must analyze what process is due persons when state and

---

3. It is a matter of well publicized public knowledge that the cases were concluded only after a great deal of violence and tragedy had produced personal injury and at least two deaths among the state defendants, potential witnesses and members of their families. These facts, while commonly known, played no part in the Court's decision which is based upon the Supreme Court's recent authoritative ruling on the procedural due process aspects of the § 1983 claim in *Parratt v. Taylor*, —— U.S. ——, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The Court makes reference to the facts only to

refer the reader to the notorious state criminal prosecution from which this civil case arose.

4. At the hearing counsel for the plaintiffs stated emphatically that they did not challenge or quarrel with the actions taken by the state court or the order disposing of the property quoted above. Counsel explained plaintiffs' position to be simply a claim for "money" against the defendants, primarily defendant Moore, for willfully failing and refusing to return the plaintiffs' property to them.

county officials and agents willfully withhold and refuse to return those persons' property taken under color of state law. The starting point is that "[t]he fundamental requirement of due process is the opportunity to be heard and it is an 'opportunity which must be granted at a meaningful time and in a meaningful manner.'" *Parratt v. Taylor*, —— U.S. at ——, 101 S.Ct. at 1915 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62, 66 (1965)).

■ After analyzing the nature of the deprivation in this case, the Court is convinced that the due process clause can be satisfied by an appropriate postdeprivation hearing. The plaintiffs are not attacking an established procedure, but rather the unpredictable, unauthorized and, if true, illegal acts of the individual defendants. *Cf. Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (deprivation pursuant to established state procedure). Furthermore, the property allegedly withheld—gun, knife and coin collections—is certainly not the type of property so involved in one's livelihood as to warrant or *require* a predeprivation hearing as a tenet of due process. *Cf. Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (deprivation of driver's license).

In *Parratt*, the Supreme Court analyzed its prior cases finding postdeprivation hearings (of the appropriate type) sufficient to satisfy due process.

These cases recognize that either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process can, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, satisfy the requirements of procedural due process. As we stated in *Mitchell v. W.T. Grant Co.*, 416 U.S. 600 [94 S.Ct. 1895, 40 L.Ed.2d 406] (1974):

"... The usual rule has been '[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate.' *Phillips v. Commissioner*, 283 U.S. 589, 596–597 [51 S.Ct. 608, 611, 75 L.Ed. 1289] (1931)." *Id.*, at 611 [94 S.Ct. at 1902].

—— U.S. at ——, 101 S.Ct. at 1915 (footnote omitted).

The Supreme Court reasoned that a negligent deprivation of property, by its nature, could be constitutionally remedied by a postdeprivation hearing. The *Parratt* factors dictate the same conclusion here. The alleged willful withholding of property and refusal to return it is certainly a "tortious loss of ... property as a result of a random and unauthorized act" of the individual defendants. —— U.S. at ——, 101 S.Ct. at 1915. If true, it amounts to a conversion irrespective of what the plaintiffs may label it. *Gallimore v. Sink*, 27 N.C.App. 65, 218 S.E.2d 181 (1975). The loss was not "a result of some established state [or county] procedure and the state [and county could not] predict precisely when the loss [would] occur." As with the negligent loss of property in *Parratt*, the alleged conversion here was unpredictable and unauthorized. Therefore "[i]t is difficult to conceive of how the State could provide a meaningful hearing before the deprivation [took] place" that could have prevented or remedied the harm. The loss occasioned by the alleged conversion "although [perhaps] State action under 'color of law' is in almost all cases beyond the control of the state [or county]." —— U.S. at ——, 101 S.Ct. at 1916. A prior hearing would no better forestall the intentional wrongdoing alleged by plaintiffs than the negligent property loss discussed in *Parratt.* The plaintiffs state they have no quarrel with the state court order directing disbursement of the property. Rather, the dispute lies solely with the defendants' subsequent tortious actions. Accordingly, the Court concludes that its due process analysis collapses into that used by the *Parratt* Court taken from *Mitchell v. W.T. Grant Co.* and *Phillips v. Commissioner.*

# 1377

■ The Court must assess the adequacy of the state judicial process available to the plaintiffs to determine their rights in the property in question. "[T]he existence of an adequate state remedy to redress property damage inflicted by state officers avoids the conclusion that there has been any constitutional deprivation of property without due process of law within the meaning of the Fourteenth Amendment." —— U.S. at ——, 101 S.Ct. at 1916 (citing *Bonner v. Coughlin*, 517 F.2d 1311, 1319 (7th Cir.), *modified en banc*, 545 F.2d 565 (7th Cir. 1976), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978)).

North Carolina provided an excellent opportunity for plaintiffs to remedy the precise wrong they alleged. In *Gallimore v. Sink*, 27 N.C.App. 65, 218 S.E.2d 181, the court ruled that a claim nearly identical to the one at bar stated a valid claim for relief. There, the plaintiff alleged that the Sheriff of Davidson County wrongfully took and disposed of plaintiff's gun and collection of silver dollars. Law enforcement officers had arrested plaintiff earlier on state criminal charges and seized the coins and the gun. Later, while the plaintiff was serving a prison term, the sheriff turned the coins over to the Davidson County Manager who turned them over to the Davidson County General Fund. The sheriff turned the gun over to the State Bureau of Investigation.

The plaintiff sought the return of his property from the sheriff and county manager, but they "refused to return the property to him." *Gallimore v. Sink*, 27 N.C.App. at 66, 218 S.E.2d at 182. He then brought a civil action for the wrongful withholding of his property. Upon the defendants' motion to dismiss for failure to state a claim, the court stated:

Conversion is defined as " 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.' " ... "The essence of conversion is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner ... and in consequence it is of no importance what subsequent application was made of the converted property, or that defendant derived no benefit from his act."

Sheriffs in North Carolina can be held liable for conversion.... Public officials enjoy no special immunity for unauthorized acts, or acts outside their official duty.... Whether the acts of the defendants in the case were consistent with their authority as defendants contend is an affirmative defense. The complaint does not disclose such an "... unconditional affirmative defense which [would defeat] the claim asserted or [plead] facts which deny the right to any relief on the alleged claim ...."

27 N.C.App. at 67, 218 S.E.2d at 183 (numerous citations omitted).

The plaintiffs here had immediate access to the state courts for redress for the alleged deprivation of their property.[5] The issues of fact would entitle them to a jury trial. *See Coulbourn v. Armstrong*, 243 N.C. 663, 91 S.E.2d 912 (1956). They could recover punitive, in addition to compensatory, damages if the evidence so warranted. *See Givens v. Sellars*, 273 N.C. 44, 159 S.E.2d 530 (1968). *"The common-law safeguards that already exist[ed]"* under state law and were readily available to the plaintiffs more than adequately satisfy the due process clause.[6] —— U.S. at ——, 101 S.Ct. at 1916 (citing *Ingraham v. Wright*, 430 U.S. 651, 682, 97 S.Ct. 1401, 1418, 51 L.Ed.2d 711, 737 (1977)) (italics supplied by the Supreme Court in *Parratt* which also noted that *Ingraham* involved even more egregious facts than those involved in *Parratt, i.*

5. From the facts developed by the parties, apparently, plaintiffs are still within the three-year statute of limitations for bringing an action in state court. N.C.Gen.Stat. § 1–52.

6. The process available to the plaintiffs provided a far more meaningful opportunity to be heard than that specifically found constitutionally satisfactory by the Supreme Court in *Parratt*.

**1378**

*e.*, an intentional tortious invasion of a liberty interest).

The Supreme Court has unequivocally declared the law applicable to these facts. As Judge (now Chief Judge) Winter so aptly stated in *McCray v. Burrell*, 516 F.2d 357, 365 (4th Cir. 1975):

> In this state of the law, it is inappropriate to consider the policy considerations which might dictate a different course of decision. They must be addressed to the Supreme Court, which alone can overrule its prior decisions, or to the Congress, which has authority to amend the [law]. Our duty is clear: We must follow the Supreme Court, not attempt to lead it.

The Court must hold that the plaintiffs fail to state a claim under 42 U.S.C. § 1983.

■ As previously stated, the complaint also fails to state a claim under 42 U.S.C. § 1985. Not only does the complaint reveal no racial or other class-based animus, plaintiffs' counsel admitted at the hearing that plaintiffs have no evidence of such. *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Williams v. St. Joseph Hospital*, 629 F.2d 448, 451 (7th Cir. 1980); *Rodgers v. Tolson*, 582 F.2d 315 (4th Cir. 1978); *Wilkins v. Rogers*, 581 F.2d 399, 404 (4th Cir. 1978); *see also Collins v. Hardyman*, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951); *Askew v. Bloemker*, 548 F.2d 673 (7th Cir. 1976).

IT IS, THEREFORE, ORDERED that the defendants' motions to dismiss the plaintiffs' claims under 42 U.S.C. §§ 1983 & 1985 be, and the same hereby are, GRANTED, and that those claims and this action are DISMISSED.